IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GRASS VALLEY TERRACE, A CALIFORNIA LIMITED PARTNERSHIP, et al., | ) | |
| Plaintiffs, | ) | No. 98-726C, 98-726-2C through 98-726-14C and 04-1299C & 04-1317C (Consolidated) |
| v. | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS IN NOS. 98-7265C AND 98-72613C

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims, and this Court's order of January 7, 2005, defendant respectfully requests the Court to dismiss the claims of plaintiff NRCB Limited Partnership ("NRCB"), Case No. 98-7265C, relating to Wishing Well I Apartments, and plaintiff ABCD Trust, Case No. 98-72613C, in their entirety, for lack of jurisdiction or for failure to state a claim upon which relief can be granted. In support of this motion, we rely upon the complaint,[1] the attached appendix, and the following brief.

DEFENDANT'S BRIEF

Nature Of The Case

Plaintiffs in these consolidated cases allege that they are property owners who entered into loan agreements with the Farmers Home Administration, United States Department of Agriculture ("FmHA"),[2] pursuant to sections 515 and 521 of the Housing Act of 1949, 42 U.S.C.

[1] For the purposes of this motion only, the factual allegations contained in the complaint will be treated as true.

[2] The Rural Housing Service is the successor agency to the Farmers Home Administration.
(continued...)

§ 1485, 1490a, to provide rental housing for low- and moderate-income persons. Complaint ¶¶ 1, 19. Plaintiffs allege that the Government breached these agreements, or effected a taking of plaintiffs' property without just compensation, through the enactment and implementation of two statutes: the Emergency Low Income Housing Preservation Act, Pub. L. No. 100-242, 101 Stat. 1877 (1988) ("ELIHPA"), and the Housing and Community Development Act of 1992, Pub. L. No. 102-550, 106 Stat. 3672 (1992) ("the 1992 Act").

Specifically, loan agreements contained various provisions designed to ensure the low-income affordability of the projects. These provisions included restrictions as to the tenants to whom the plaintiffs could rent, the rents plaintiffs could charge, and the profits plaintiffs could receive, as well as requirements regarding the maintenance and financial operations of each project. Complaint ¶ 19. In connection with these loan agreements, each plaintiff executed a promissory note and real estate mortgage. Complaint ¶ 20. According to plaintiffs, these documents also provided plaintiffs with the option of prepaying their mortgages, and thereby discontinuing the low-income affordability restrictions, at any time, Complaint ¶¶ 20-21, except that, in the case of loans into which plaintiffs entered after December 21, 1979, plaintiffs were required by the terms of the loan documents to maintain the low-income affordability of the housing for a 15 or 20 year period following the date of the loan. Complaint ¶¶ 7-8.

Plaintiffs complain that ELIHPA amended the Housing Act of 1949 to place restrictions upon the prepayment options available to housing project owners who had entered into mortgages prior to December 21, 1979, Complaint ¶ 26, and that the 1992 Act extended these

---

[2](...continued)
For purposes of this brief, "FmHA" refers to the Farmers Home Administration or the Rural Housing Service, where appropriate.

prepayment restrictions to loans made between 1979 and 1989, Complaint ¶ 33. Plaintiffs allege that this legislation repudiated the purported right of these program participants to prepay their loans and "terminate" their loan agreements at any time. Complaint ¶ 31. In Count One of their complaint, plaintiffs assert a claim for breach of contract, upon the theory that this legislation "anticipatorily repudiated the contract between the defendant and each of the plaintiffs," and that this "anticipatory repudiation has deprived and will deprive each plaintiff of its contractual right to terminate its contract at any time at its option . . . ." ¶ 53. In Count Two, plaintiffs allege that "defendant's conduct constitutes a taking of plaintiffs' real and intangible property interests for public use and requires payment to plaintiffs of just compensation under the Fifth Amendment to the U.S. Constitution. ¶ 56.

Even if all of the facts alleged in the complaint are taken as true, however, the claims of NRCB must be dismissed in part, and those of ABCD Trust must be dismissed in their entirety, because they are barred by the statute of limitations. The allegations contained in the complaint are insufficient to establish that any plaintiffs have satisfied the jurisdictional requirement of filing suit within the applicable six-year statute of limitations, because the complaint is devoid of any facts indicating when any plaintiff's claim accrued.[3] In the case of NRCB and ABCD Trust,

---

[3] There is actually no complaint at all asserting claims on behalf of ABCD Trust. ABCD Trust joined this litigation in July 20, 1999, by filing a notice of additional plaintiff in No. 98-726C, purportedly in accordance with the version of RCFC 20(a)(1) then in effect. In an order dated November 5, 2004, however, this Court held that all of the plaintiffs were improperly joined, and ordered that they be severed from the lead plaintiff's case, assigned separate docket numbers, and consolidated with the lead case. Given the fact that the rules of this Court have never allowed a party to bring suit by filing a mere notice of additional plaintiff, rather than a complaint, except where the prerequisites for joinder are met, ABCD Trust cannot be said to have effectively invoked this Court's jurisdiction and commenced an action against the United States. And, given the fact that there is no complaint on file naming ABCD Trust as a plaintiff either in the lead case or under the docket number assigned to ABCD Trust, ABCD Trust cannot be said to have
(continued...)

however, the evidence confirms that the events that plaintiffs characterize as constituting a breach of contract or taking of property occurred, and that the claims in question accrued, more than six years before they filed suit.

ARGUMENT

One of the jurisdictional prerequisites for suit in this Court is that the suit be filed within six years of the accrual of the claim asserted. "Every claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. As the United States Court of Appeals for the Federal Circuit has observed:

> Section 2501 constitutes a jurisdictional limit on the authority of the Court of Federal Claims. In Caguas Central Federal Savings Bank v. United States, we explained why this is so: "[I]n the Court of Federal Claims, the statute of limitations is jurisdictional, because filing within the six- year period was a condition of the waiver of sovereign immunity in the Tucker Act. . . .

Frazer v. United States, 288 F.3d 1347, 1351 (Fed. Cir.2002), quoting Caguas Central Federal Savings Bank v. United States, 215 F.3d 1304, 1310 (Fed. Cir.2000).

The principles governing the time of accrual of the claims in this case were addressed by the Supreme Court in Franconia Associates v. United States, 536 U.S. 129 (2002). In Franconia, the Supreme Court reversed the decisions of this Court and of the Federal Circuit (which had held that the plaintiffs' claims accrue upon the enactment of ELIHPA), and stated: "Unless petitioners treated ELIHPA as a present breach by filing suit prior to the date indicated for

---

[3](...continued)
pleaded any claim against the United States. These circumstances constitute grounds for dismissing ABCD Trust even apart from the statute of limitations.

performance, breach would occur when a borrower attempted to prepay, for only at that time would the Government's responsive performance become due." Id. at 143 (footnote omitted).[4]

Elsewhere in the same opinion, a breach of contract is described as occurring "when a borrower tenders prepayment and the Government then dishonors its obligation to accept the tender and release its control over use of the property that secured the loan." Id. at 133. This does not mean, however, that the borrower's attempt to prepay must take the form of mailing a check or otherwise physically transmitting the outstanding balance of the loan in order to trigger the running of the statute of limitations. According to plaintiffs' theory of the case, as reflected in the complaint, the submission of a prepayment application is sufficient to trigger to the Government's obligation to perform. Thus, although the complaint does not allege that any plaintiffs actually transmitted their outstanding loan balances to the Government, it does allege that "certain plaintiffs have submitted applications for prepayment and/or an offer of incentives from the Government. The Government has in every instance refused to accept prepayment from plaintiffs pursuant to the provisions of their contracts." Complaint ¶ 43. Under the reasoning in Franconia, such non-acceptance of prepayment establishes an immediate breach for statute of

[4] Although the Supreme Court's analysis of the statute of limitations issue focused upon the breach of contract claims, the Court reached the same conclusion with respect to the takings claims, stating:

> [W]e need not separately address petitioners' alternative theory of recovery based on the Takings Clause of the Fifth Amendment. The Federal Circuit's holding that takings relief was time barred hinged entirely on its conclusion that petitioners' contract claims accrued upon passage of ELIHPA. See 240 F.3d, at 1365-1366. Because that conclusion was incorrect, we hold, the Federal Circuit erred in dismissing petitioners' takings theory on grounds of untimeliness.

536 U.S. at 149.

limitation purposes. Franconia, 536 U.S. at 142-43 ("Once the Government's pledged performance is properly comprehended as an obligation to accept prepayment, the error in the Federal Circuit's reasoning becomes apparent. Failure by the promissor to perform at the time indicated for performance in the contract establishes an immediate breach").[5] According to these principles, NRCB and ABCD Trust failed to file suit within six years of the accrual of their claims.

1. NRCB was named as a plaintiff in the complaint, filed on September 16, 1998. According to the complaint, NCRB owns, among other properties, Wishing Well I Apartments ("Wishing Well"). Complaint ¶ (11)(5)(i); Appendix in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Pl. App.") 393 (¶ 2), 398-403. (Plaintiffs filed the referenced appendix on November 29, 2000.) The FmHA loan for Wishing Well I Apartments was originally made to Wishing Well Associates in December 1975. Pl. App. 402-03. (Wishing Well Associates is not a plaintiff.) The loan agreement was amended on February 23, 1984, and the amended loan agreement names NRCB as the borrower. Pl. App. 398-400.

NRCB submitted its prepayment application on January 15,1990. Pl. App. 394,, 404-06. As stated in the declaration of Tom Vasilatos, a partner in NRCB:

> I, as the general partner, submitted a written request to prepay this mortgage without restriction on January 15,1990, requesting to prepay on July 15, 1990. Ex. C. This letter followed prior correspondence between the partnership and FmHA on prepayment dating back to 1989. We received a letter from FmHA dated February 14, 1990, in which the agency denied the request to

[5] One must keep in mind that, in referring to an "obligation to accept prepayment" and an "immediate breach," the Supreme Court was not addressing the merits of the claim. The merits – including the question whether ELIHPA was inconsistent with any contractual rights – were not before the Supreme Court, and were not decided by that court.

> prepay. Ex. D. . . . After several more months of submitting more data and more discussions with FmHA, it still refused to accept prepayment without restriction. . . .

Pl. App. 394 (¶ 6) (emphasis added).[6]

Thus, according to NRCB, by February 14, 1990, a written prepayment request had been submitted to the Government and had been denied in writing by the Government. Further, the Government continued thereafter to refuse to accept prepayment after the prepayment date stated in the request passed. Pl. App. 409-413. By his time, according to the theory of the Government's contractual obligation alleged in the complaint, "the Government's responsive performance bec[a]me due." Franconia, 536 U.S. at 143. All of these events occurred more than eight years before NRCB filed suit. Accordingly, NRCB's claims concerning Wishing Well I are time-barred.

2. ABCD Trust was not named as a plaintiff in the complaint, but purported to join this litigation in July 20, 1999, by filing a notice of additional plaintiff in No. 98-726C. According to the Notice, ABCD Trust had "entered into two contracts for rental housing" at two projects: Heritage Apartments ("Heritage"), and Viewmont East Apartments ("Viewmont"). The Notice does not state when ABCD Trust entered into the two referenced contracts, nor does it describe the nature and content of the contracts.

FmHA originally issued mortgages for Heritage and Viewmont in or about 1979 and 1977, respectively, to "another owner." Pl. App. 14 (¶ 2), 18, 23. The properties were acquired

---

[6] Exhibits C and D, referenced in the quoted passage, are the January 15,1990 prepayment request (Pl App. 404-06) and the February 14, 1990 response (Pl. App. 407-08), respectively.

by the Koh family through assumption agreements on June 30, 1989. Pl. App. 14 (¶ 2), 18-25.[7] The assumption agreements contain a 20-year restrictive use clause, ending on June 30, 2009. Koh decl. at ¶ 2, exhibit A (attachment A).

As stated in the declaration of James C.Y. Koh, a trustee of ABCD Trust, "[f]rom 1991 to 1993, [the Koh] family made an effort to prepay the FmHA loans on these properties." Pl. App. 15 (¶ 7). In July 1992, the Kohs submitted to FmHA a written request to prepay their loans. Defendant's Appendix ("Def. App.") 1-4. By letter dated August 20, 1992, FmHA acknowledged receipt of the Koh's prepayment application, Def. App. 5-6, and notified the Kohs of several additional conditions that needed to be satisfied in connection with the prepayment application, including certification by the borrower "that all tenants in place at the time of prepayment (if/when it occurs) will be allowed to remain tenants in residency at HUD rent structures as long as they live." Def. App. 5. The agency's August 20, 1992 letter also stated that release and satisfaction documents would carry a restrictive use provision. Id.

Although the Koh's July 1992 prepayment request did not specify the date upon which payment would be made, the intent of the borrowers was to complete the prepayment within several months of the application. Thus, in a letter of August 25, 1992, responding to the agency's

---

[7] The assumption agreements were entered into, and executed by, five individual members of the Koh family. There is no indication that ABCD Trust was a party to either of these contracts. Nor are we aware of any document or other evidence establishing any contractual relationship between ABCD Trust and the Government pertaining to FmHA loans, despite the assertion contained in the notice of additional plaintiff that ABCD Trust "entered into two contracts for rental housing" at Heritage and Viewmont. Absent proof of privity of contract between ABCD Trust and the Government, ABCD Trust's contract claims must be dismissed for lack of jurisdiction. First Hartford Corporation Pension Plan & Trust v. United States, 194 F.3d 1279, 1289 (Fed. Cir. 1999); Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998), cert. denied, 528 U.S. 820 (1999); Erickson Air Crane Co. of Wash. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984).

August 20, 1992 letter, Christopher J. Koh stated: "It has always been our understanding . . . [that] your review and our payoff would occur withing a couple of months of application. October 20th, 92 is the date referenced in your letter to us." Def. App. 7. In the same letter, Mr. Koh stated that it was "imperative that we target prepayment in October," and that a delay until February 1993 might jeopardize the refinancing of the loan. Id.

Thus, by July 1992, a written prepayment request had been submitted to the Government, for the purpose of completing prepayment by October 1992. Rather than simply grant the request, as the Government was allegedly obligated to do, the Government responded in August 1992 by imposing preconditions and restrictions. All of this occurred more than six and a half years before ABCD Trust filed its notice of additional plaintiff. Accordingly, ABCD Trust's claims are time-barred.

## CONCLUSION

For the foregoing reasons, the claims of NRCB concerning Wishing Well I Apartments in No. 98-7265C, and all of the claims of ABCD Trust in No. 98-72613C, should be dismissed with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/David M. Cohen**
DAVID M. COHEN
Director

**Filed electronically**

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:
Kenneth S. Kessler
Michael S. Dufault
Commercial Litigation Branch
Civil Division
Department of Justice

March 11, 2005