**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

GRASS VALLEY TERRACE,
a California Limited Partnership, *et al.*,

Plaintiffs,

v.

THE UNITED STATES

Defendant.

**File Nos. 98-726C; 98-726-2C through 98-726-14C; 04-1299C & 04-1317C**
**Chief Judge Edward J. Damich**

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS IN NOS. 98-7265C AND 98-72613C**

Plaintiffs hereby submit their opposition to defendant's motion to dismiss in case nos. 98-7265C and 98-72613C. In its motion, defendant seeks to dismiss certain claims on statute of limitations grounds, citing Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims. However, defendant's motion suffers from the dual procedural flaws that it is untimely and is a motion for summary judgment in disguise. On the merits, defendant's motion misconstrues the facts and misapplies the Supreme Court's ruling in this case on the applicable standard for determining when plaintiffs' claims accrued for statute of limitations purposes. All told, defendant's motion at most presents disputed fact issues regarding the date when the subject plaintiffs' claims accrued. For these reasons, defendant's motion should be denied in its entirety and the claims of all plaintiffs should proceed to trial on the merits.

**FACTUAL BACKGROUND**

The plaintiffs in this action are owners of real estate developed under the Section 515 program administered by the Farmers Home Administration of the U.S. Department of

Agriculture. Complaint ¶ 19. Plaintiffs seek damages based on the impact of legislative acts that restrict their ability to prepay their government mortgages and begin charging market rents at their properties. *Id.* ¶ 3. All of the plaintiffs, including the two that are the focus of defendant's motion, seek damages commencing on the date that they would have prepaid their mortgages without restrictions but for the government's wrongful conduct. *Id.* ¶ 3, 53, 56. As a result, plaintiffs' claims accrued, and they began suffering damages, only upon the date that: (1) they were eligible to prepay, and the agency was obligated to accept their prepayment, according to the terms of their contract documents, *and* (2) they actually would have exercised their right to prepay without restrictions.

Plaintiffs fall into two general categories based on the terms of their agreements with the government: (1) owners who entered the program prior to December 1979 ("pre-1979 owners"), whose contracts contained a right to prepay and exit the Section 515 program at any time they chose, and (2) owners who entered the program after December 1979 ("post-1979 owners"), whose contracts contained the same right to prepay at any time, but also were subject to a twenty-year covenant prohibiting them from raising rents or otherwise displacing tenants during the first twenty years of their participation in the program. *Id.* ¶ 5, 7-8. Thus, while the pre-1979 owners held the right to terminate their participation in the program at any time, the post-1979 owners could do so only after their twenty-year restrictive covenants expired.

Plaintiffs commenced this action on September 16, 1998. Plaintiff ABCD Trust was added to the case, without objection by defendant, on July 20, 1999. In their complaint, plaintiffs seek damages on two theories of liability. First, plaintiffs sued for breach of contract, alleging that the statutes at issue constituted an anticipatory repudiation of their contracts. *Id.* ¶ 53. Plaintiffs further allege that the government's legislative repudiation ripened into an actual

breach upon the date that each plaintiff otherwise would have exercised its right to prepay. *Id.* ¶ 53. Second, plaintiffs allege that the government's actions in restricting the use of their properties effected an as-applied regulatory taking of their properties, entitling them to just compensation under the Fifth Amendment. *Id.* ¶ 55-57. Plaintiffs allege that both the breach and the taking occurred upon the date that the government's performance under the contract was due but not rendered. *Id.* ¶ 53, 56.

**A. Wishing Well I**

Wishing Well I, owned by plaintiff NRCB Limited Partnership ("NRCB"), is located in Marysville, Washington. Vasilatos Decl., ¶ 2 (App. 393). The original owner was issued a mortgage by the FmHA in 1975. *Id.*, Ex. B (App. 402). The property was then transferred to the current owner through an amendment to the Loan Agreement and an Assumption Agreement, both dated February 23, 1984. *Id*., Ex. A (App. 398); Declaration of Mark J. Blando ("Blando Decl."), Ex. A (attached hereto). In addition, prior to the transfer, the agency reamortized the loan on September 8, 1980. *Id*., Ex. C (App. 405); Blando Decl., Ex. B. This reamortization resulted in the addition of a twenty-year restrictive covenant on the property, which prohibited the owner from prepaying the loan and raising rents until September 8, 2000. *Id*.; Blando Decl. Ex. B.

Upon entering into the program, the owner intended to hold the property for the long term and thus developed and maintained the property with an eye toward prepaying and raising rents to market levels in the future. *Id.* ¶ 4 (App. 393-94). Beginning in the late 1980s, however, the owner also considered to the possibility of selling Wishing Well I to a non-profit organization – assuming that acceptable sale terms could be achieved. Blando Decl., Ex. C (Vasilatos Depo. at 116, 129); *id*., Ex. D. The owner also considered forming its own non-profit organization to

purchase the property. *Id*., Ex. C (Vasilatos Depo. at 124); *id*., Ex. D. As part of the owner's exploration of that possibility, it submitted a letter to the agency on January 15, 1990 inquiring as to whether it would be permitted to prepay the government loan, which it understood would be necessary for any sale to be completed. Vasilatos Decl., Ex. C (App. 404). Thus, the owner's intention in submitting this request to the agency was not to prepay and raise rents at that time, but rather was part of the owner's contemplation of the possibility of selling the property to a non-profit organization.

In response, the agency informed the owner by letter dated February 14, 1990 that it was not yet eligible to request to prepay the mortgage. *Id*., Ex. D (App. 407). Specifically, the agency took the position that the transfer of the property in 1984 (rather than the reamortization of the mortgage in 1980) resulted in the addition of a twenty-year restrictive covenant extending through February 23, 2004. *Id.* Thus, the agency concluded that the owner was not eligible to prepay under the contract documents until 2004. *Id.*

Around the same time, however, the owner determined that the concept of a sale to a non-profit organization was not feasible. In particular, it realized that the severe tax consequences of such a sale made that approach uneconomical. Blando Decl., Ex. C (Vasilatos Depo. at 116-18, 122, 132, 135, 139). As a result, the owner effectively withdrew the request, abandoned its exploration of a non-profit sale, and returned to its original intention of prepaying and raising rents to market levels at a later date. *Id.* (Vasilatos Depo. at 118, 132, 135) ("About the same time they came back with those comments, I had finally realized that I couldn't pencil out the venture as a low income project. So I just gave up. . . . I just sort of withdrew . . .").

Given the owner's decision to withdraw its request, the agency's denial of the request had no immediate impact on the owner. Knowing that it still would exercise its option to prepay at

some point in the future, however, the owner wanted to clarify the agency's position that the contract documents prohibited prepayment until the year 2004. Blando Decl., Ex. C (Vasilatos Depo. at 124-25 ("I thought, well, I had better get this cleared up. I don't want this twenty years restriction."). As a result, the owner hired an attorney to review the matter. Vasilatos Decl., Ex. E (App. 409). The attorney concluded that the 1984 transfer did not result in the imposition of a restrictive covenant, and so informed the agency by letter dated July 25, 1991. *Id.* In response, the agency sent a letter dated July 30, 1991 in which it agreed with the attorney and acknowledged that it had erred in its prior letter of February 14, 1990.[1] *Id.*, Ex. F (App. 412). The agency thus concluded that the owner was "eligible *to request* to prepay" at that time. *Id* (emphasis added). Accordingly, the agency took no further action on the owner's January 15, 1990 request – which had been withdrawn by the owner – but instead invited the owners to submit a new request by detailing the information that the owner would have to submit as part of a prepayment application. *Id.*

Having already abandoned its consideration of the possibility of a non-profit sale, the owner did not submit a new request at that time. The owner later submitted a request to prepay in 1994, but the application was returned as incomplete. Blando Decl., Exs. E, F. The owner did not pursue its request any further at that time, as it had been informed that prepayment without restrictions was simply not an option for the owner based on the terms of the statutes at issue. Vasilatos Decl., ¶ 7 (App. 394). Moreover, the property at that time remained subject to the twenty-year covenant imposed in 1980 and thus was ineligible to request prepayment without restrictions in any event.

---

[1] At that time, however, neither of the parties addressed the separate question whether the reamortization of the mortgage in 1980 resulted in the addition of a twenty-year restrictive covenant extending through the year 2000.

On December 1, 2000, shortly after the restrictive covenant finally expired on September 8, 2000, the owner again submitted a request to prepay without restrictions. Blando Decl., Ex. G. Through additional correspondence and communications between the parties, the agency determined that the property was needed in the community where it is located, and therefore denied the request. *Id*., Ex. H. Accordingly, the damages claimed by plaintiffs for Wishing Well I assume that, but for the government's wrongful repudiation, the owner would have prepaid without restrictions as soon as the restrictive covenant expired in September 2000. Blando Decl., Ex. I (excerpt from Expert Report of George R. Kavel, Ph.D.).

**B. Viewmont East and Heritage Apartments**

The Viewmont East Apartments ("Viewmont") and Heritage Apartments ("Heritage") properties are located in Port Orchard, Washington, a suburb of Seattle. The FmHA issued mortgages to the original owners of Viewmont and Heritage in or about 1977 and 1979, respectively. Declaration of James C. Y. Koh ("Koh Decl.") ¶ 2 (Pl. App. 14, 18, 23). On June 30, 1989, both properties were assumed by Maria Koh, Audrey Koh, Barbara Koh, Christopher Koh, and David Koh. Koh Decl., Exs. A & B (Pl. App. 18-27). The interests of Audrey Koh, Barbara Koh, Christopher Koh, and David Koh – the four children of James Koh and Maria Koh – were then transferred to a family trust called the ABCD Trust. Blando Decl., Ex. J (Koh Depo. at 24). All five of the original owners retained a 20% interest in the properties. *Id*. (Koh Depo. at 34).

The Assumption Agreements signed by the owners incorporated the terms of the original promissory notes and mortgages issued for the properties, including the prepayment right set forth in the promissory notes. Koh Decl., Exs. A & B (Pl. App. 18-27). However, the agreements also contained a restrictive use provision that prohibited the owners from prepaying

the mortgages and raising rents until the expiration of a twenty-year period beginning on June 30, 1989 and ending on June 30, 2009. *Id.* (Pl. App. 20, 25). As a result, the assumption effectively transformed the property from a pre-1979 property to a post-1979 property. Thus, under the terms of the relevant agreements, the owners of Viewmont and Heritage were permitted to prepay without restrictions no earlier than June 30, 2009. *Id.*

At the time of the assumptions, the owners believed that they were permitted, and in fact encouraged, to prepay the mortgages at any time. Blando Decl., Ex. J (Koh Depo. at 38-39). This understanding was based on both the terms of the original agreements assumed by the owners and specific discussions with the agency at the time of the assumption. *Id.* (Koh Depo. at 43-45). Based on this belief, the owners made various efforts from 1991 to 1993 to prepay the government loans on both properties. Koh Decl., ¶ 7 (App. 15).

The agency initially responded by offering the owners a package of "prepayment prevention" incentives pursuant to the applicable statutes. *Id*. Soon thereafter, however, the agency realized that the properties were subject to the twenty-year restriction described above and therefore were not eligible to prepay or to receive the prepayment incentives offered. Koh Decl., ¶ 8, Exs. C & D (App. 16, 28, 29). As a result, the agency determined that it lacked the statutory authority to extend the incentives offer it had previously presented to the owners and thereupon rescinded its offer. *Id.*

The owners believed that it was improper for the agency to retract its incentives offer, and initially disputed the agency's decision. But the owners nonetheless later came to the understanding that the properties were in fact bound to the restrictive use clause until 2009 – notwithstanding the contrary representations made to them by the agency upon their entry into the program. *Id*., Ex. J (Koh Depo. at 39, 42-43). Following this realization, the owners have

planned to prepay immediately upon the arrival of their twenty-year anniversary on June 30, 2009. *Id.*, Ex. J (Koh Depo at 52-53, 118-19); Koh Decl., ¶ 3 (App. 15). Accordingly, the damages claimed by plaintiffs for the Viewmont East and Heritage properties assume that, but for the government's wrongful repudiation, the owners would have prepaid without restrictions on June 30, 2009 and thereafter begin charging market rents. Blando Decl., Ex. K (excerpts from Expert Report of George R. Kavel, Ph.D.).

**C. Procedural History**

As noted above, plaintiffs filed their complaint in this action on September 16, 1998. Defendant then filed an answer and simultaneously moved to dismiss certain claims on statute of limitations grounds on January 20, 1999. In particular, defendant argued that the claims of all pre-1979 owners accrued upon the passage of the 1988 legislation, and therefore became time-barred in 1994. The Court granted defendant's motion to dismiss and the Federal Circuit affirmed. *See Grass Valley Terrace v. United States*, 46 Fed. Cl. 629 (2000), *aff'd*, 7 Fed. Appx. 928 (Fed. Cir. 2001). The case was then appealed to the Supreme Court, where it was consolidated with the related case of *Franconia Associates v. United States*. The Supreme Court issued its decision in those consolidated appeals on June 10, 2002, reversing the decision of the Federal Circuit and restoring the claims of all pre-1979 owners. *See Franconia Associates v. United States*, 536 U.S. 129 (2002).

While the claims of the pre-1979 owners were on appeal, defendant filed on August 7, 2000 a motion for summary judgment respecting the contract and takings claims of the post-1979 owners. That motion sought dismissal of all the remaining claims on numerous grounds. The Court denied defendant's summary judgment motion on January 2, 2002, rejecting the government's defenses to liability and ordering that the claims proceed to discovery and trial.

*Grass Valley v. United States*, 51 Fed. Cl. 436 (2002). Discovery then ensued and the parties are now in the midst of pre-trial preparations.

## ARGUMENT

### A. Defendant's Motion is Both Mislabeled and Untimely.

#### 1. Defendant's Arguments Render its Motion One for Summary Judgment.

"Where, as here, the court is presented with matters outside the pleadings, a motion to dismiss for failure to state a claim is treated as a motion for summary judgment under Rule 56." *Warr v. United States*, 46 Fed. Cl. 343, 350 (2000); *see also* RCFC 12(c). Summary judgment shall be given if the pleadings, depositions, affidavits and other submissions "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986); *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001). "A fact is material if it might affect the outcome of the suit under governing law." *Warr*, 46 Fed. Cl. at 346 (citing *Anderson*, 477 U.S. at 248).

In this case, defendant moves to dismiss certain claims on statute of limitations grounds, asserting that the facts establish that the claims at issue accrued more than six years prior to the date that plaintiffs filed suit. To support its arguments, however, defendant relies on a wealth of evidence outside of the parties' pleadings. For example, defendant cites throughout its motion various documents and the declarations submitted by the plaintiffs in support their opposition to defendant's motion for summary judgment. Defendant also attaches to its motion an appendix which contains additional documents. Thus, defendant's motion should not be analyzed under Rule 12(b), but rather must be treated as a motion for summary judgment. As a result,

defendant's motion must be denied if the parties' submissions show that material facts are in dispute.

As reflected in the statement of facts set forth above, and as further explained below, there are, at the very least, disputed fact issues as to when the challenged claims accrued. These fact issues can only be resolved at the trial of this matter. For this reason alone, defendant's motion must be denied.

**2. Defendant's Motion to Dismiss is Untimely.**

Rule 12(g) provides that "[i]f a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party *shall not* thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) of this rule on any of the grounds there stated." R. Ct. Fed. Cl. 12(g) (emphasis added).[2] The purpose of the rule was aptly described by the Third Circuit:

> The Rule [12(g)] "contemplates the presentation of an omnibus pre-answer motion in which defendant advances every available Rule 12 defense and objection he may have that is assertable by motion." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1384 at 726 (1990). Thus, if a defendant seeks dismissal of the plaintiff 's complaint pursuant to Rule 12(b)(5) on the ground that service of process was insufficient or ineffective, it must include that defense either in its answer or together with any other Rule 12 defenses raised in a pre-answer motion. *See generally* 2 James Wm. Moore et al., Moore's Federal Practice, § 12.21 (3d ed. 1997).

*McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 194 (3rd Cir. 1998); *see also United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 882 (Fed. Cir. 1997) ("CIT Rules 12(g) and 12(h) provide for a waiver of the defenses of inadequate service and personal jurisdiction if those

[2] Rules 12(g) and 12(h) of the Court's rules mirror the corresponding sections in the Federal Rules of Civil Procedure.

defenses are omitted from the defendant's answer or omitted from a motion to dismiss under CIT Rule 12.").

Thus, Rule 12(g) requires a party to combine all grounds for dismissal it wishes to assert under Rule 12 into a single motion. *Caribbean Trading & Fidelity Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 117 (2d Cir. 1991) (J. Mahoney, concurring) (citing Rule 12(g) for the proposition that "as a general rule, [a] defense not asserted in initial motion presenting other defenses may not be asserted by subsequent motion."); *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1st Cir. 1983) ("Rule 12(g) operates in conjunction with Rule 12(h) to require that all defenses permitted to be raised by motion must be included in the same motion."); *Galbreath v. Burlington Coat Factory Warehouse of Arundel, Inc.*, 2003 U.S. Dist. LEXIS 22622 (D. Md. 2003) ("[U]nder the plain language of Fed. R. Civ. P. 12(g), [defendants] were required to consolidate their Rule 12 motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted."). Courts have held that a party's failure to comply with 12(g) can render a second motion to dismiss untimely:

> Municipal defendants' motion to dismiss for failure to state a claim is untimely under Rule 12(g), because they previously made a Rule 12(b)(3) motion objecting to venue in the Eastern District of Pennsylvania[, while]….Defendant St. Vincent's Hall's motion is timely because it made no prior 12(b) motion....

*Thorn v. New York City Dep't of Social Services*, 523 F. Supp. 1193, 1196 n.1 (S.D.N.Y. 1981); *see also Yacovelli v. Moeser*, 2004 U.S. Dist. LEXIS 9152, 27-28 (M.D.N.C. 2004) ("Federal Rule 12(g) provides that a party raising any 12(b) defenses by pre-answer motion waives any 12(b) defenses that are not raised in that motion.").[3]

---

[3] While RCFC 12(h)(3) provides that the Court can dismiss a case for lack of jurisdiction at any time, that rule is typically cited in support of the Court's authority to dismiss a case for lack of subject matter jurisdiction *sua sponte*. *See, e.g, Devine v. Levin*, 739 F.2d 1567, 1570 (Fed.

This action was filed more than six years ago in September 1998. On January 20, 1999, defendant moved to dismiss the claims of all pre-1979 owners – including Wishing Well I – on statute of limitations grounds. Defendant then filed a motion for summary judgment on August 7, 2000 seeking the dismissal of the plaintiffs' contract and takings claims. Thus, the current motion is the third dispositive motion filed by defendant in this case, and defendant's third bite at the proverbial apple. Under Rule 12(g), defendant's failure to raise its current arguments earlier renders its current motion untimely. Further, if nothing else, defendant's decision not to assert its current jurisdictional arguments earlier in the course of this litigation undermines the credibility of its current claims.[4]

**B. Defendant's Motion Must Be Denied on the Merits.**

**1. A Breach Does Not Occur, and the Statute of Limitations Is Not Triggered, Until the Time that Government Performance Comes Due.**

In attempting to define when the three challenged claims accrued for statute of limitations purposes, defendant relies on the decision of the Supreme Court in *Franconia*. In so doing,

---

Cir. 1984); *Fincke v. United States*, 675 F.2d 289, 297(Ct. Cl. 1982); *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 n.2 (9th Cir. 2005); *Stewart v. United States*, 1999 U.S. App. LEXIS 735 (Fed. Cir. 1999); *Cayton v. United States*, 1998 U.S. App. LEXIS 21651 (Fed. Cir. 1998). Thus, Rule 12(h)(3) does not eviscerate the requirement of Rule 12(g) that a party avoid piecemeal litigation by bringing all motions under 12(b) at the same time.

[4] Defendant's assertions that plaintiff ABCD Trust was improperly joined and has no privity of contract with the government are likewise untimely. Defendant provides no rationale for why these alleged grounds for dismissal were not raised earlier. Further, defendant cites no authority for its assertion that the addition of ABCD Trust to this action, which occurred more than six years ago without objection by defendant, was procedurally defective. In addition, the proper remedy for any arguable error in addition of ABCD Trust would be a simple amendment of the complaint, rather than a dismissal of plaintiffs' claims. Similarly, the question whether the ABCD Trust, or the individuals who make up that trust, should be the named plaintiffs in this action can be addressed through an amendment of the pleadings rather than a dismissal of the subject claims. Finally, defendant's argument that ABCD Trust lacks privity with the government at most presents fact issues to be resolved at trial regarding the nature and terms of the transfer of the individual owners' interests into the trust.

however, defendant misses the fundamental premise of the Court's ruling. As the decision makes clear, it is not simply the submission of a letter requesting prepayment that triggers the statute of limitations, but rather the government's *failure to perform as promised when the time for performance arrives*. *See Franconia Assocs. v. United States*, 536 U.S. 129, 142-143 (2002) ("Failure by the promisor to perform at the time indicated for performance in the contract establishes an immediate breach."); *see also* Restatement (Second) of Contracts § 235(2) (1979) ("When performance of a duty under a contract is due[,] any non-performance is a breach.") (cited in *Franconia*, 536 U.S.at 143).[5] As a result, no breach occurs, and the statute of limitations does not commence to run, until the defendant fails to perform as promised.

In short, the critical question is not "when did the plaintiff submit a request to the agency," but rather "when did the government's performance under the contracts come due." In many cases, those two dates will coincide because the submission of a prepayment request typically triggers the government's responsive obligation to accept the request. In some cases, however, a request does not trigger any duty on the defendant's part. The most obvious example directly applies here: when the property is already subject to restrictive use provisions at the

---

[5] *Accord Trauma Service Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("A breach of contract is a failure to perform a contractual duty when it is due."); *Winstar Corp. v. United States*, 64 F.3d 1531, 1545 (Fed. Cir. 1995), *aff'd* 518 U.S. 839 (1996) ("Failure to perform a contractual duty when it is due is a breach of the contract."); *Sacramento Mun. Util. Dist. v. United States*, 63 Fed. Cl. 495, 503 (2005) ("When performance of a duty under a contract is due any non-performance is a breach."); *Am. Capital Corp. v. United States*, 63 Fed. Cl. 637, 666 (2005); *Arakaki v. United States*, 62 Fed. Cl. 244, 254-255 (2004) ("When a promisor fails "to perform at the time indicated for performance in the contract," that failure is an actual breach.") (citing *Franconia*, 536 U.S. at 142-43); *Allegre Villa, L.P. v. United States*, 60 Fed. Cl. 11, 17 (2004); *see also AMTRAK v. Lexington Ins. Co.*, 2005 U.S. Dist. LEXIS 2282 at 9 (D.D.C. 2004) ("Because plaintiff's contract claim did not accrue until defendants' performance on the contract was due, which was at the earliest less than three years prior to its commencement of this suit, the statute of limitations does not bar plaintiff's claims.").

time the request is made, the agency is not required – even under the terms of the original contract documents – to accept the owner's request.[6]

Here, the key fact that is fatal to defendant's arguments is that *all three of the properties that defendant seeks to dismiss on limitations grounds were subject to restrictive use provisions at the time defendant alleges their claims accrued.* In the case of both Viewmont and Heritage, it is undisputed that the properties became subject to a twenty-year restrictive covenant extending through the year 2009 at the time the properties were assumed by the current owners. In the case of Wishing Well I, the evidence shows that a twenty-year covenant extending through 2000 was imposed on the property as a result of a reamortization of the property in 1980. Thus, at the time the prepayment requests relied upon by defendant were submitted, the government had no present duty of performance under the contracts. Consequently, no breach could have occurred at that time and plaintiffs' claims could not have accrued at that time.[7] Defendant's arguments to the contrary ignore both the facts and the law of the case in this matter.

---

[6] It is important to bear in mind that the Supreme Court decision in *Franconia* involved only the claims of pre-1979 owners. Since there were no post-1979 owners (or any other owners alleged to be subject to restrictive use provisions) before the Supreme Court, the Court had no occasion to address the situation where an owner requests to prepay but the government has no current obligation to accept the request. *See Franconia Assocs.*, 536 U.S. at 143 ("Unless petitioners treated ELIHPA as a present breach by filing suit prior to the date indicated for performance, breach would occur when a borrower attempted to prepay, for only at that time would the Government's responsive performance become due.").

[7] As expressly authorized by the Supreme Court's decision in *Franconia*, the claims respecting the three subject properties were brought on an anticipatory repudiation theory. *See Franconia Assoc.* at 145 ("To recapitulate, 'the time of accrual . . . depends on whether the injured party chooses to treat the . . . repudiation as a present breach.' 1 C. Corman, Limitation of Actions § 7.2.1 at 488 (1991). If that party "elects to place the repudiator in breach before the performance date, the accrual date of the cause of action is accelerated from [the] time of performance to the date of such election." *Id.*, at 488-489."). Thus, these plaintiffs elected to sue for breach before the time for performance under their contracts arrived.

For similar reasons, plaintiffs' takings claims could not have accrued prior to the time that the government was actually obligated to permit plaintiffs to exercise their right to prepay and regain the full fee simple ownership of their properties. *See United States v. Riverside Bayview Homes, Inc*., 474 U.S. 121, 127 (1985) ("Only when a permit is denied and the effect of the denial is to prevent 'economically viable' use of the land in question can it be said that a taking has occurred."); *see also Alliance of Descendants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1994) ("A takings claim under the Fifth Amendment accrues on the date that the United States takes a private property interest for a public use without just compensation."). A takings claim accrues only when "all the events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (emphasis in original); *accord Brighton Village Assocs. v. United States*, 52 F.3d 1056, 1060 (Fed. Cir. 1995); *Kinsey v. United States*, 852 F.2d 556, 557 (Fed. Cir. 1988). Thus, neither plaintiffs contract claims nor their takings claims could have accrued upon the dates alleged by defendant.

**2. Defendant's Motion, At Best, Raises Disputed Fact Issues Regarding the Accrual of the Subject Plaintiffs' Claims.**

The evidence, as outlined in the facts set forth above, establishes that none of the subject plaintiffs' claims could have accrued at the time alleged by defendant. Even assuming, however, that defendant's view of the evidence is otherwise, such fact disputes are properly reserved for trial. *See Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986); *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990); *Augustine v. United States*, 704 F.2d 1074, 1077-78 (9th Cir. 1983); *Kolovitz v. United States*, 1995 U.S. Dist. LEXIS 912, at *6 (N.D.Ill. 1995) ("[I]f the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction depends on resolution of factual issues which go to the merits of the case; in this situation,

resolution of the jurisdictional issue should await a determination of the relevant facts via a summary judgment motion or at trial."); 5A Wright & Miller § 1350 at 235.

In the case of Wishing Well I, there are, at the very least, disputed facts as to whether the owner actually intended, upon submitting its 1990 request to the agency, to exercise its right to prepay and convert to market rents at that time. On the contrary, the evidence shows that the owner submitted a request only as part of its exploration of the possibility of selling the property to a non-profit organization; a plan which the owner wholly abandoned shortly after the submission of the request. In addition, the evidence shows that the owner *withdrew* its request before it was ruled upon by the agency. *See Howard W. Heck and Assoc. v. United States*, 134 F.3d 1468 (Fed. Cir. 1998) (holding withdrawal of a permit application prevents agency from being able to render a decision on the merits); *Pax Christi Mem'l Gardens, Inc. v. United States*, 52 Fed. Cl. 318 (2002). Finally, the evidence shows that defendant never ruled on the merits of the request in any event. Instead, the agency initially took the position that the owner was ineligible to request to prepay due to continuing restrictions on the use of the property. When the agency later reversed its position, it still declined to rule on the original request, and instead invited the owner to submit a new request. By that time, however, the owner had already withdrawn its request and reverted to its initial plans to hold on to the property and convert to market-rate rents at a later date.[8]

---

[8] In the case of Viewmont and Heritage, it does not appear that there are any fact issues to be resolved at trial on the question of jurisdiction, in that the *undisputed facts* confirm that those claims were filed in a timely manner. As explained above, the evidence shows that those properties' claims could not have accrued more than six years prior to the time that they filed suit, given the fact that they are both post-1979 properties whose restrictive covenants will not expire until the year 2009.

Thus, defendant's arguments regarding the subject claims at the very least present genuine issues of material fact that should be resolved at the trial of this matter, rather than through defendant's untimely motion to dismiss.

## CONCLUSION

For the reasons set forth above, plaintiffs respectfully request that defendant's motion to dismiss in Nos. 98-726-5C and 98-726-13C be denied in its entirely and that the claims of all plaintiffs proceed to trial.

Dated: April 15, 2005

**Filed Electronically**

**s/Jeff H. Eckland**

Jeff H. Eckland
Mark J. Blando, Of Counsel
ECKLAND & BLANDO LLP
700 Lumber Exchange
10 South Fifth Street
Minneapolis, MN 55402
Tele: 612-305-4444
Fax: 612-305-4439