IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| GRASS VALLEY TERRACE, A CALIFORNIA LIMITED PARTNERSHIP, et al., Plaintiffs, | No. 98-726C, 98-726-2C through 98-726-14C and 04-1299C & 04-1317C (Consolidated) |
| v. | (Chief Judge Damich) |
| THE UNITED STATES, Defendant. | |

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS IN NOS. 98-7265C AND 98-72613C

INTRODUCTION

In our moving brief, we established that the claims of plaintiff NRCB Limited Partnership ("NRCB"), Case No. 98-7265C, relating to Wishing Well I Apartments, and all of the claims of plaintiff ABCD Trust, Case No. 98-72613C, were barred by the statute of limitations, and that, therefore, the Court lacked jurisdiction to entertain these claims. Plaintiffs' response fails to demonstrate otherwise.

We demonstrated that, according to NRCB's own version of the facts, NRCB submitted its application to prepay its Farmers Home Administration ("FmHA") loan for Wishing Well I Apartments on January 15,1990, and the Government denied the application on February 14, 1990. We demonstrated that, according to ABCD Trust's own version of the facts, by July 1992, a written prepayment request had been submitted to the Government with respect to the ABCD Trust properties in question, for the purpose of completing prepayment by October 1992; yet, rather than simply grant the request, as the Government was allegedly obligated to do, the Government responded in August 1992 by imposing preconditions and restrictions.

In both of these instances, the Government's refusal to allow prepayment in response to the plaintiff's request to prepay occured more than six years before that plaintiff filed suit. And,

according to plaintiffs' theory of the case, such a refusal constitutes a breach of the alleged contractual right to prepay at any time at the option of the borrower, as well as an uncompensated taking of plaintiffs' property. Thus, plaintiffs' breach of contract and takings claims were filed more than six years after they accrued, and are time-barred.

Plaintiffs' principal argument in response is that, because of certain restrictive use provisions governing their properties, they actually did not possess a right to performance from the Government until years after they submitted their prepayment requests, and that, therefore, the Government's failure to grant these requests did not constitute a breach of contract or a taking. This assertion, however, is inconsistent with the contractual right that is at the heart of the claims of all of the plaintiffs in this case, including NRCB and ABCD Trust. That right – which is both invoked and at the same time obscured in plaintiffs' response – is a right to prepay their loans at any time. The presence of restrictive use provisions may detract from a borrower's motive to prepay, but plaintiffs cannot argue that such provisions negate the right to prepay. Nothing in plaintiffs' argument negates the fundamental fact that plaintiffs sought to prepay, and the Government did not allow hem to prepay, more than six years before they filed suit.

Plaintiffs also offer several procedural arguments. These arguments lack merit, and, in any event, they do not constitute legal grounds upon which to decline to dismiss the claims in question.

## ARGUMENT

### I. According to Plaintiffs' Theory of the Case, the Government's Performance Came Due, and a Breach Occurred as to the Contracts in Question, More than Six Years Before NRCB and ABCD Trust Filed Suit

The core of plaintiffs' argument concerning the timeliness of the claims in question is contained in the following statement in plaintiffs' response:

> [T]he critical question is not "when did the plaintiff submit a request to the agency," but rather "when did the government's performance under the contracts come due." In many cases, those two dates will coincide because the submission of a prepayment request typically triggers the government's responsive obligation to accept the request. In some cases, however, a request does not trigger any duty on the defendant's part. The most obvious example directly applies here: <u>when the property is already subject to restrictive use provisions at the time the request is made, the agency is not required – even under the terms of the original contract documents – to accept the owner's request</u>.

Plaintiffs' Response 14-15 (emphasis added; footnote omitted). Plaintiffs' assertion that the Government is not obligated to accept the owner's prepayment request as long as the the property is subject to restrictive use provisions is contradicted, however, by plaintiffs' own complaint, and by the contract terms upon which plaintiffs rely. It is plain from the complaint and the contract terms cited in the complaint that the referenced restrictive use provisions are not a limitation upon the right to prepay; they are a limitation only upon the owner's use of the property during the period covered by the provision. The contract provision concerning prepayment is the same in contracts that contain restrictive use provisions as in those that do not.

Thus, plaintiffs allege:

> Plaintiffs that entered into FmHA contracts on or after December 21, 1979 . . . also are contractually entitled to exercise their option to prepay <u>at any time</u>. However, by their terms all post-1979 FmHA contracts are subject to a fifteen (15) or twenty (20) year restrictive use clause. This clause . . . requires that the property <u>be operated as low-rent housing</u> for a period of fifteen (15) or twenty (20) years from the date of loan origination.

Complaint ¶ 7 (emphasis added). Similarly, plaintiffs state in their response:

> Plaintiffs fall into two general categories based on the terms of their agreements with the government: (1) owners who entered the program prior to December 1979 ("pre-1979 owners"), whose

> contracts contained a right to prepay and exit the Section 515 program at any time they chose, and (2) owners who entered the program after December 1979 ("post-1979 owners"), whose contracts contained the same right to prepay at any time, but also were subject to a twenty-year covenant prohibiting them from raising rents or otherwise displacing tenants during the first twenty years of their participation in the program. . . .

Plaintiffs' Response 2 (emphasis added).

A limitation upon the owner's right to raise rents or to displace tenants is not the same as a limitation upon the owner's right to prepay. And, although the restrictive use clause may well negate the advantage to a borrower from prepayment, and remove a borrower's motive to prepay, the clause says nothing about the right to prepay. Thus, the fact that the properties in question were subject to restrictive use provisions when the prepayment requests were submitted does not make the Government's failure to grant these requests any less of a breach as to these requests than as to any of the other prepayment requests at issue in this case.

Plaintiffs also argue that, in the case of Wishing Well I, there are material issues of fact in dispute. Plaintiffs assert that there is a dispute "as to whether the owner actually intended upon submitting its 1990 request to the agency, to exercise its right to prepay . . . ." Plaintiffs' Response 16. Plaintiffs do not explain why the subjective, unexpressed intent that the owner may have had when applying to prepay would have any bearing upon the Government's contractual obligation with respect to the prepayment request, nor do plaintiffs cite any authority suggesting that this intent is material. Plaintiffs assert that the owner withdrew the request before it was ruled upon by the agency, id., but they cite no document or other evidence indicating that it was in fact withdrawn or even that any intention to withdraw the request was communicated to

the agency.[1] Further, as is demonstrated by the Appendix in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Pl. App."), filed by plaintiffs on November 29, 2000, not only did NRCB not withdraw its prepayment application before the Government denied it, but NRCB continued to pursue the application by various means, including the submission of a letter from NRCB's attorney challenging the denial. Pl. App. 409-411.[2]

In sum, whatever the NRCB principals may have thought or felt about the request to prepay the loan for Wishing Well I, the fact remains that the request was submitted and denied more than six years before NRCB filed suit. And, with respect to ABCD Trust, plaintiffs do not

---

[1] Plaintiffs quote out of context certain words from the deposition of Tom Vasilatos, an NRCB partner, to support the assertion that the request was withdrawn ("'About the same time they came back with those comments, I had finally realized that I couldn't pencil out the venture as a low income project. So I just gave up. . . . I just sort of withdrew . . .'."). Plaintiffs' Response 4, quoting Vasilatos Depo. 118, set forth in Plaintiffs' Response Exhibit C. In fact, however, Mr. Valilatos testified as follows:

> About the same time they came back with those comments, I had finally realized that I couldn't pencil out the venture as a low income project. So I just gave up. I didn't do anything. I just sort of withdrew, and went on my way because if I remember correctly I was bulding a summer home and I was in the throws of building a unit, a standard luxury apartment for market rates.

Id. (emphasis added). This testimony does not state that Mr. Vasilatos withdrew the prepayment request. It states that he did nothing, and "sort of withdrew" from activity in the matter. And, none of the cited deposition testimony specifies whether even this vague "withdrawal" occurred before or after the prepayment request was denied.

[2] Plaintiffs attempt to characterize this letter not as an effort to pursue the prepayment request, but as an attempt to resolve a dispute concerning the duration of the restrictive use provision then in effect. Plaintiffs' Response 5. This spin, however, is contradicted by the plain language of the letter. In the letter's opening paragraph, the author states that Mr. Vasilatos referred the matter to him for review of the agency's "decision by letter dated February 14, 1990 to deny [NRCB] the right to prepay their Farmers Home Administration Loan." Pl. App. 409. The same letter closes with a request to "[p]lease reconsider . . . your decision as outlined in your letter of February 14, 1990."

even argue that there are any material issues of fact in dispute; they do not suggest that the intent to prepay reflected in the prepayment request was less than genuine, nor do they suggest that the request was withdrawn. They rely solely upon the notion that contracts' restrictive use provisions are a limitation upon the contracts' prepayment provisions. As we have demonstrated, this notion is unfounded, and is inconsistent with the allegations in the complaint.

II. Plaintiffs' Procedural Arguments Lack Merit

Plaintiffs argue that, because our motion is supported by materials outside the pleadings, it should more properly be treated as a motion for summary judgment, and that, as such, it should be denied if there are material issues of fact in dispute.[3] As we have established, however, plaintiffs have failed to demonstrate that there are any material issues of fact in dispute.[4]

Plaintiffs also argue that, as a motion to dismiss, our motion is untimely because the arguments raised were not included in the motion to dismiss that the Government filed in 1999. This argument lacks merit. Plaintiff ABCD Trust had not even joined this litigation when the referenced motion to dismiss was filed. Further, the Court specifically invited the Government to

---

[3] To illustrate that we rely upon materials outside the pleadings, plaintiffs state: "For example, defendant cites throughout its motion various documents and the declarations submitted by the plaintiffs in support of their opposition to defendant's motion for summary judgment." Plaintiffs' Response 9. Plaintiffs do not suggest that they dispute the truth of the documents and declarations that they submitted in support of their own opposition to the referenced summary judgment motion.

[4] Plaintiffs also state that "defendant's argument that ABCD Trust lacks privity with the government at most presents fact issues to be resolved at trial regarding the nature and terms of the transfer of the individual owners' interests into the trust." Plaintiffs' Response 12 n.4. Plaintiffs fail, however, to identify what these factual issues are, or why "the nature and terms of the transfer of the individual owners' interests into the trust" is relevant. The privity issue involves the nature and terms of the contract in question, and, more particularly, whether ABCD Trust was a party to the contract. Plaintiffs have yet to identify evidence indicating that ABCD Trust was ever a party to this contract.

file a motion to dismiss based upon the statute of limitations, and gave the Government until March 11, 2005, within which to do so. Finally and most importantly, failure to satisfy the Tucker Act's statute of limitations is a jurisdictional defect, Frazer v. United States, 288 F.3d 1347, 1351 (Fed. Cir.2002); Caguas Central Federal Savings Bank v. United States, 215 F.3d 1304, 1310 (Fed. Cir.2000). "A jurisdictional matter can be raised at any stage of a judicial proceeding by any party or by the court on its own motion." Phillips v. General Servs. Admin., 924 F.2d 1577, 1579 (Fed. Cir. 1991). This rule applies, inter alia, to failure to satisfy the Tucker Act's statute of limitations. See Minnesota Chippewa Tribe Red Lake Band v. United States, 768 F.2d 338, 341 n.2 (Fed. Cir. 1985). See also RCFC 12(h) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action").

## CONCLUSION

For the foregoing reasons, and for the reasons stated in our moving brief, the claims of NRCB concerning Wishing Well I Apartments in No. 98-7265C, and all of the claims of ABCD Trust in No. 98-72613C, should be dismissed with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/David M. Cohen**
DAVID M. COHEN
Director

**Filed electronically**

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:
Kenneth S. Kessler
Michael S. Dufault
Commercial Litigation Branch
Civil Division
Department of Justice

May 3, 2005