**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

GRASS VALLEY TERRACE,
a California Limited Partnership, *et al.*,

Plaintiffs,

v.

THE UNITED STATES

Defendant.

**File No. 98-726C and consolidated cases**
**(Chief Judge Edward J. Damich)**

**JOINT STATUS REPORT**

Pursuant to the Court's Order of May 5, 2005, the parties respectfully submit the following Joint Status Report concerning their progress with respect to potential settlement and the additional discovery that the parties desire to conduct should their continuing efforts to resolve this case short of trial be unsuccessful.

Between May 5 and the date of this filing, counsel for the parties conducted regular, and at times daily, telephone conferences, in the course of which they exchanged documents and information pertinent to their respective positions, and reached general agreement concerning the considerations to be taken into account in determining reasonable settlement amounts in this case. These discussions and exchanges have also proved helpful toward addressing the additional discovery needed by both parties. In their discussions, the parties also discussed areas of disagreement concerning the factual premises and assumptions to be relied upon in addressing these considerations, and reached tentative agreement as to some of them. The parties also scheduled and prepared for a face-to-face meeting among counsel and experts retained by the parties to further address these matters.

A meeting among counsel and the parties' experts was held on May 24, 2005, followed by a meeting of counsel for the parties with Judge Horn, in her capacity as Alternative Dispute Resolution ("ADR") judge in an number of related cases that have been referred to the Court's ADR pilot program. (Although this case has not been referred to Judge Horn for ADR, this case was a major subject of discussion in the latter meeting, because many of the considerations pertinent to settlement in this case and in the ADR cases are similar. The parties' continuing efforts through the ADR process have helped to guide and delineate the issues addressed herein.) In the course of these meetings, the parties exchanged additional documents and information, and reached tentative agreement concerning certain additional elements of the damage calculation process. The parties also undertook to exchange certain additional information supporting their respective views concerning other elements of this process.

The parties have reached agreement that the principal elements of determining damages for settlement purposes are: Rent, Other Income, Annual Income Increase, Annual Expense Increase, Vacancy, Operating and Maintenance Expenses, Discount Rate (Market), Discount Rate (Restricted), Transaction Costs, Effect of Conversion Period, Per Unit Rent-Up Costs (if any), and Capital Needs (if any).

The parties also have reached tentative agreement concerning resolution of the following elements, subject to the parties being able to reach a compromise as to the other elements:

- Other Income (i.e., income other than rent that a project would earn in as an unrestricted market-rate housing project): The parties have agreed to a method for estimating this amount.

- Annual Income and Expense Increase (i.e., inflation factor for future years): The parties have tentatively compromised upon inflation factors to be utilized for this purpose.

- Vacancy rates: The parties have tentatively compromised upon a vacancy rate to assume in estimating a project's rental income as an unrestricted market-rate housing project.

- O&M Expenses: The parties believe that they are very close to reaching agreement concerning a method for estimating a project's operating and maintenance expenses as an unrestricted market-rate housing project. This factor, however, is related to the determination of capital needs, discussed below.

- Discount Rates: The parties have tentatively agreed upon the discount rate to be applied in the restricted scenario, and believe that they are close to reaching tentative agreement on the discount rate to be applied in the market scenario.

One of the major subjects of discussion in the above-mentioned meetings (and of debate between the parties' respective experts) concerned estimating the cost of a project's future annual capital needs as an unrestricted market-rate housing project. The Government provided plaintiffs with what the Government considers to be average annual capital needs expenses, as well as documents detailing the various expense items considered in reaching this estimate and the principal assumptions underlying the estimate. Plaintiffs provided the Government with a different estimate, as well as documentation and other information on the issues whether an offset for capital needs is appropriate, and if so, what the amount should be. Plaintiffs also agreed, during the meeting with Judge Horn, to provide the Government a written statement detailing in what respects they disagree with the various assumptions underlying the Government's capital needs estimate, and the basis for the disagreement, within approximately two weeks. The Government agreed to respond to this statement within approximately two weeks after receiving it. The parties are hopeful that, following this exchange, they will be able to reach a reasonable compromise concerning the estimation, if any, of annual capital needs expenses.

Another major subject of discussion in the above-mentioned meetings concerned estimating the rent that a project would be able to command as an unrestricted market-rate housing project. Although the parties' positions as to the correct basis for making this estimate are far apart, the parties identified a compromise approach that they believe is feasible, if they can negotiate a compromise concerning certain numerical assumptions involved. The Government has agreed to provide plaintiffs with certain additional information supporting its position concerning these assumptions, and expects to do so within the next week.

The parties have made less progress toward resolution of the remaining elements of determining damages. However, the parties believe that capital needs and rent are the most significant elements, and that, if the parties reach a compromise concerning these elements, they will be able to reach a compromise concerning the remaining elements. Assuming that this is accomplished, the parties will be in a position to calculate damage amounts for each project at issue.

Based upon the foregoing progress and the further progress that the parties anticipate, the parties propose that the suspension of deadlines set forth in the May 5, 2005 Order remain in effect, and that the parties continue their meetings and exchanges of information in an effort to reach a settlement in this case. These efforts will also prove helpful toward completing the additional discovery required by the parties should this case go to trial. The parties also propose that they file another status report concerning their progress in this matter on or before June 29, 2005.

Respectfully submitted,

**s/ Jeff H. Eckland**

JEFF H. ECKLAND
Mark J. Blando, Of Counsel
ECKLAND & BLANDO LLP
700 Lumber Exchange
10 South Fifth Street
Minneapolis, Minnesota 55402
Telephone: (612) 305-4440
Facsimile: (612) 305-4439

*Attorneys for Plaintiffs*

Dated: June 3, 2005

**Filed Electronically**

**With the Consent of the Attorney**

**For Defendant.**

PETER D. KEISLER
Assistant Attorney General

**s/ David M. Cohen**

DAVID M. COHEN
Director

**s/ Shalom Brilliant**

SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
Room 8012
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

*Attorneys for Defendant*

Dated: June 3, 2005