# In the United States Court of Federal Claims

Nos. 98-726C, 98-726-2C through 98-726-14C and
04-1299C & 04-1317C
(Consolidated)

(Filed: December 21, 2005)

****************************************
**GRASS VALLEY TERRACE, A CALIFORNIA LIMITED PARTNERSHIP, et al.**,

Plaintiffs,

v.

**THE UNITED STATES,**

Defendant.
****************************************

Statute of limitations under 28 U.S.C. § 2501; Failure to file within the limitations period does not remove the court's subject matter jurisdiction; Real party in interest under RCFC 17(a)

*Jeff H. Eckland,* Eckland & Blando LLP, Minneapolis, MN, counsel of record for Plaintiffs, with whom was *Mark J. Blando*, Of Counsel.

*Shalom Brilliant*, Senior Trial Counsel, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., counsel of record for Defendant, with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director.

---

**OPINION AND ORDER**

---

**DAMICH**, Chief Judge.

## I. Introduction

This matter is before the court on Defendant's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). Defendant argues that the claims brought by two of the Plaintiffs in this consolidated action should be dismissed for failing to file within the applicable six-year statute of limitations under 28 U.S.C. § 2501 (2005). With respect to Plaintiff NRCB Limited Partnership ("NRCB"),

captioned 98-726-5C, the motion pertains solely to its claims relating to the Wishing Well I Apartments. As to Plaintiff ABCD Trust ("ABCD"), captioned 98-726-13C, the motion pertains to all of its claims which include the Viewmont East Apartments and the Heritage Apartments. For the reasons discussed herein, Defendant's motion is DENIED.

## II. Background

Plaintiffs in this consolidated action are owners of real estate properties developed under a low-income housing program with the Farmers Home Administration ("FmHA"). Compl. ¶ 19. Through this program, the FmHA contracted with Plaintiffs to construct, rehabilitate, and/or improve housing projects in various communities. *Id.* The parties entered into loan agreements that imposed certain obligations upon both parties – obligations that are at the center of this lawsuit. *Id.* ¶¶ 19-25.

With regard to the parties' obligations, the loan agreements contained various provisions designed to ensure that the housing remained affordable for low-income tenants. *Id.* ¶ 19. Such provisions included restrictions as to the individuals eligible to rent these units, the amount of money that could be charged for rent, and the maximum profits owners could receive, as well as various other requirements pertaining to the maintenance and operations of these housing projects. *Id.* In connection with these loan agreements, each Plaintiff executed various documents including a promissory note, a mortgage or deed of trust, and/or an assumption agreement. *Id.* ¶¶ 20-21. Plaintiffs fall into one of two categories depending upon the date the loan agreements were executed. Plaintiffs who entered into the FmHA program prior to December of 1979 ("pre-1979") have a right to prepay their loans at any time and exit the program entirely ("prepay without restriction") thereby ridding themselves of the obligation of charging below-market rents. Pls.' Opp'n at 2-3.[1] Those Plaintiffs who entered the program after December of 1979 ("post-1979") have the same right to prepay under the loan agreement, but cannot exit the program until the expiration of a 20-year restrictive-use provision ("prepay subject to the restriction"), which requires these owners to continue charging below-market rents for this period. *Id.* Plaintiffs filed this lawsuit due to the enactment of federal legislation that restricted their prepayment options under the loan agreements – options that Plaintiffs allege attracted them to the program. *Id.* at 3.

In 1979, Congress found that many of the participants in this low-income housing program had prepaid their mortgages and exited the program, thereby threatening the goal of the program – the availability of affordable low-income housing. *See Franconia Assocs. v. United States*, 536 U.S. 129, 135 (2002) (citing H.R. Rep. No. 96-154, p. 43 (1979)). Concerned that "these projects [remain] available to low and moderate income families for the entire original term of the loan," Congress amended the National Housing Act to slow and/or prevent the loss of these low-income homes. *See id.* (brackets in original). In this amendment, Congress barred the

---

[1] The citations to each Plaintiff's brief are in the plural form (Pls.') because Plaintiffs styled their motion as a joint motion.

FmHA, with narrow exceptions, from accepting the prepayment of any loan that was entered into before or after its enactment, unless the borrower agreed to remain in the program by maintaining the low-income use of the property for a term of 15 or 20 years from the original date of the loan. *Id.* (discussing congressional action). In 1980, Congress retreated from the position taken in the 1979 amendment and removed the retroactive operation of the prepayment restrictions. *Id.* (citing The Housing and Community Development Act of 1980) ("HCDA 1980"). Accordingly, after this 1980 Act took effect, borrowers of pre-1979 loans remained unaffected by the 1979 congressional Act.

In 1987, Congress again expressed concern that participants were "prepaying or . . . refinancing their FmHA loans, without regard to the low-income and elderly tenants in these projects." *See id.* at 136 (elipsis in original). In response, Congress passed the Emergency Low Income Housing Preservation Act of 1987 ("ELIHPA"), which restored the 1979 Act's restriction on the prepayment rights of participants who held pre-1979 loans, and also authorized the FmHA to grant participants various incentives to convince them to remain in the program. *See* Pub. L. No. 100-242, 101 Stat. 1877 (codified as amended, 42 U.S.C. § 1472(c) (1994)); *see also Franconia*, 536 U.S. at 136. Similarly, the Housing and Community Development Act of 1992 ("HCDA"), extended the incentive provisions of ELIHPA to loans entered into after 1979. *See* Pub. L. No. 102-550, 106 Stat. 3672 (codified in relevant part at 42 U.S.C. § 1472(c) (1994)). Accordingly, after these congressional acts took effect, participants holding pre-1979 and post-1979 loans were treated the same.

Concerned with the effects these legislative acts had on their loan agreements, on September 15, 1998, Plaintiffs filed suit in this court alleging that these legislative acts constituted an anticipatory repudiation of their loan agreements by impairing their ability to prepay their loans. Pls.' Opp'n at 2-3 (citing Compl. ¶ 53). In addition, Plaintiffs asserted "that the government's legislative repudiation ripened into an actual breach upon the date that each Plaintiff would have otherwise exercised their right to prepay." *Id.* The Plaintiffs also alleged that the government's actions in restricting the use of their properties acted as an applied regulatory taking entitling them to just compensation under the Fifth Amendment. *Id.* at 3 (citing Compl. ¶¶ 55-57). On April 12, 2000, after Defendant filed a motion to dismiss the claims of pre-1979 borrowers on statute of limitations grounds, and after Plaintiffs filed a motion for partial summary judgment, this court held that Plaintiffs' pre-1979 claims (which under the loan agreements could be prepaid at anytime) were barred by the statute of limitations because their claims accrued in 1987, when Congress enacted ELIHPA and restricted their ability to prepay their loans. *Grass Valley Terrace v. United States*, 46 Fed. Cl. 629, 635 (2000). Another judge on this court reached a similar result in a related case. *See Franconia Assoc. v. United States*, 43 Fed. Cl. 702, 715 (1999). The Federal Circuit affirmed each of these dismissals. *Franconia Assocs. v. United States*, 240 F.3d 1358 (Fed. Cir. 2001); *Grass Valley Terrace v. United States*, 7 Fed. Appx. 928, 2001 WL 534141 (Fed. Cir. 2001) (per curiam).

Shortly thereafter, the *Franconia* and *Grass Valley* Plaintiffs petitioned the Supreme Court for certiorari, which the court granted. *Franconia Assoc. v. United States*, 534 U.S. 1073 (2002). On January 4, 2002, the Supreme Court reversed the Federal Circuit's rulings and held

that Plaintiffs' claims did not accrue when Congress enacted the statute, but rather, the legislation amounted to an anticipatory repudiation. *Franconia*, 536 U.S. at 133. According to the Supreme Court, a "breach would occur, and the six-year limitations period would commence to run, when a borrower tenders prepayment and the government then *dishonors its obligation* to accept the tender and release its control over use of the property that secured the loan." *Id.* (emphasis added). The Supreme Court explained that an anticipatory repudiation is not an immediate breach, but rather ripens into a breach only when performance becomes due or when the promisee elects to treat the repudiation as a breach. *Id.* at 143-44. As noted by the Supreme Court, if the "party 'elects to place the repudiator in breach before the performance date, the accrual date of the cause of action is accelerated from [the] time of performance to the date of such election.'" *Id.* at 144 (citing 1 C. Corman, Limitation of Actions § 7.2.1, p. 488 (1991)).

The Supreme Court's ruling indicates that Plaintiffs' breach of contract claims accrued not with the passage of the legislation, but when the Plaintiffs attempted to prepay their loans and were *improperly* rejected, or in the alternative, when Plaintiffs elected to treat the passage of the legislation as a breach by bringing suit. *See id.* Clearly, if the FmHA improperly denied Plaintiffs' requests, Plaintiffs' claims accrued at that time and would be time-barred if not filed within six years. However, it also follows that if the FmHA properly denied Plaintiffs' requests, no breach occurred. Thus, the accrual date would not be the date the requests were denied, but would rather be the date Plaintiffs elected to treat the passage of the legislation as a breach by filing this suit. *See id.*

Upon remand, this court, in recognition of the Supreme Court's ruling and the potential effect it could have on Plaintiffs' claims, invited Defendant to file a dispositive motion as to any of Plaintiffs' claims it believed were untimely. In response, Defendant filed the motion currently pending before the court, whereby it argues that NRCB's pre-1979 claims with respect to the Wishing Well I Apartments, and all of ABCD's post-1979 claims are untimely. Accordingly, Defendant is in the anomalous position of arguing that it did in fact breach its contract with these Plaintiffs, but that the breach occurred so long ago that these Plaintiffs' claims are time-barred. In opposition, Plaintiffs argue that Defendant did not breach the loan agreements at the times argued by Defendant. These are the precise issues before the court.

## III. Legal Standard

### A. The Statute of Limitations Issue Goes to the Sufficiency of Plaintiffs' Claims, Not the Subject Matter Jurisdiction of This Court

Defendant raises the statute of limitations issue by filing a motion under both RCFC 12(b)(1) for lack of subject matter jurisdiction and, in the alternative, under RCFC 12(b)(6) for failure to state a claim. Def.'s Mot. at 1. Plaintiffs argue that Defendant's motion is actually one for summary judgment, as Defendant relies on materials outside the pleadings – and that it is

untimely.[2] This dispute has practical significance. The Plaintiff has the burden of showing that the court has jurisdiction. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002). The Defendant, however, has the burden where a motion for failure to state a claim is filed. *See Conti v. United States*, 291 F.3d 1334, 1338 (Fed. Cir. 2002) (stating that "[a] trial court should not dismiss a complaint for failure to state a claim unless it is 'beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief'") (*quoting Ponder v. United States*, 117 F.3d 549, 552 (Fed. Cir. 1997)). In a motion for summary judgment, all facts are construed in favor of the non-moving party (in this case, the Plaintiffs), and the motion will be denied if there is a genuine dispute of material fact. *Jay v. Sec'y, DHHS,* 998 F.2d 979, 982 (Fed. Cir. 1993). The thrust of Defendant's argument is that the statute of limitations is jurisdictional in the U.S. Court of Federal Claims; that is, it is properly the subject of a motion to dismiss for lack of subject matter jurisdiction. Def.'s Reply at 7. Defendant seems to tacitly concede that its motion could be considered as one for summary judgment, but, in that event, there is no genuine dispute of material fact. *Id.* at 6 n.3.

The Federal Circuit has produced what seem to be inconsistent opinions on whether the statute of limitations issue is properly tested by a motion to dismiss for lack of subject matter jurisdiction or whether it is properly tested by a motion to dismiss for failure to state a claim.[3] In one line of cases, the Federal Circuit has found that the timeliness of a claim is not a matter of subject matter jurisdiction, but is instead an element of the claim addressed under RCFC 12(b)(6). *See Venture Coal Sales Co. v. United States*, 370 F.3d 1102, 1105 n.2 (Fed. Cir. 2004) (affirming dismissal of the case for failure to file within the statute of limitations period under 28 U.S.C. § 2501, but noting that the proper ground for dismissal is failure to state a claim, not lack of subject matter jurisdiction); *Ariadne Fin. Services Pty. Ltd. v. United States* 133 F.3d 874, 878 (Fed. Cir. 1998) (affirming dismissal of the case on statute of limitations grounds under 28 U.S.C. § 2501, but stating "that the question of a time bar on [plaintiff's] claim does not affect the subject matter jurisdiction of the Court of Federal Claims"); *Borough of Alpine v. United States*, 923 F.2d 170, 170 n.1 (Fed. Cir. 1991) (affirming dismissal of the case for failure to file a

[2] Plaintiffs argue that as a motion under RCFC 12(b) Defendant's motion is untimely because RCFC 12(g) requires that all Rule 12 defenses be asserted in the first pre-answer motion (which was filed in this case on January 22, 1999). Pls.' Opp'n at 10-12. The court does not find Plaintiffs' argument persuasive. The issues raised in Defendant's motion deal with issues similar to those determined by the Supreme Court in *Franconia* and, thus, it is proper for Defendant to raise them on remand. Moreover, this court invited Defendant to file any such motions that are relevant in light of the Supreme Court's ruling. In any event, RCFC 12(h)(2) indicates that a 12(b)(6) motion may be filed as a motion for judgment on the pleadings under RCFC 12(c), thereby demonstrating that such a motion may be raised after a pre-answer motion is filed. Furthermore, 12(c) states that where the motion relies on matters outside the pleadings, it shall be treated as a motion for summary judgment. For these reasons, Defendant's motion is timely.

[3] The difficulty associated with this issue is not unique to the Federal Circuit. *See Skiwira v. United States*, 344 F.3d 64, 71 n.8 (1st Cir. 2003) (collecting cases from several circuits).

timely appeal under the Contract Disputes Act, but noting that the untimeliness of the appeal does not remove the court's subject matter jurisdiction over the case); *Bray v. United States*, 785 F.2d 989, 992 (Fed. Cir. 1986) (affirming dismissal of the case for failure to file within the six-year statute of limitations period under 28 U.S.C. § 2401(a), but noting that the untimeliness of the claim did not remove the court's subject matter jurisdiction);[4] *see also Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 687 (Fed. Cir. 1992) (affirming dismissal of the case on other grounds, but critiquing the MSPB's dismissal on statute of limitations grounds, stating "[t]o conclude in such a case that the petitioner loses because the forum is 'without jurisdiction' is to obscure the nature of the defect. It would be more accurate to conclude that the petitioner has failed to prove the necessary elements of a cause for which relief could be granted.").

In another line of cases, however, the Federal Circuit has found that the statute of limitations issue is jurisdictional and, thus, implicates the court's subject matter jurisdiction and should be addressed under RCFC 12(b)(1). *See Frazer v. United States*, 288 F.3d 1347, 1349 (Fed. Cir. 2002) (stating that "Section 2501 constitutes a *jurisdictional* limit on the authority of the Court of Federal Claims." After making this determination, the Federal Circuit affirmed the trial court's dismissal of Plaintiffs' "complaint *for lack of subject matter jurisdiction* because they failed to file the complaint within the six-year statute of limitations.") (emphases added); *Caguas Cent. Fed. Sav. Bank v. United States*, 215 F.3d 1304, 1310 (Fed. Cir. 2000) (stating that "[i]n the Court of Federal Claims, the statute of limitations is jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491(a)(1)." Accordingly, the court found that because the complaint was not filed within the six-year period, the court has "no jurisdiction.") (citing *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (affirming the trial court's dismissal of the case on jurisdictional grounds due to plaintiff's failure to file within the statute of limitations period and stating that the "burden of establishing jurisdiction, including jurisdictional timeliness, must be carried by the [plaintiff]"); *see also Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1454 (Fed. Cir. 1997) (affirming dismissal of the case on statute of limitations and other grounds and stating that "we have stated that section 2501 is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity . . .") (quoting *Hopland*, 855 F.2d at 1576-77).

The language of the statute of limitations in this case, 28 U.S.C. § 2501, supports the view that the untimeliness of an action does not remove the court's subject matter jurisdiction. The statute provides: "Every claim of which the United States Court of Federal Claims *has jurisdiction* shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2005) (emphasis added). Under cardinal principles of statutory interpretation, the court must interpret the statute so that "no clause, sentence or word shall be superfluous, void, or insignificant." *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citations

---

[4] The court seemed to acknowledge that this finding is equally applicable where 28 U.S.C. § 2501 is involved. *See Bray*, 785 F.2d at 992 (discussing the meaning of the term "jurisdiction," as utilized by courts analyzing 28 U.S.C. § 2501).

omitted). In employing these principles, it is evident that even where a claim is untimely and, thus, "barred," this court still *"has jurisdiction"* over the claim. *See* 28 U.S.C. § 2501 (emphasis added).

This plain English interpretation of the statute is supported by the Federal Circuit cases that have *closely examined* this issue. In *Ariadne*, the Federal Circuit stated, "this statutory language confirms that the question of a time bar on [plaintiff's] claim *does not affect* the subject matter jurisdiction of the Court of Federal Claims. The Court of Federal Claims has subject matter jurisdiction to adjudicate cases arising under the Tucker Act *regardless of the timeliness* of [plaintiff's] actions." 133 F.3d at 878 (emphases added). In addition, in *Venture Coal Sales,* the Federal Circuit, in affirming the trial court's determination that the plaintiff did not file within the applicable limitations period, critiqued the trial court's finding that such a failure deprived the court of jurisdiction. 370 F.3d at 1105. In so doing, the Federal Circuit stated that the trial court *"certainly has subject matter jurisdiction"* over plaintiff's claim for a tax refund and, thus, it had jurisdiction over the case to determine whether plaintiff's claim was time-barred. *Id.* at 1105, n.2 (emphasis added). The Federal Circuit ultimately stated that, "the most precise ground for the trial court's decision here therefore would seem to be that [Plaintiff] failed to make its claim within the required limitations period -- *that is not a question of subject matter jurisdiction of the court*." *Id.* (emphasis added).

The key to explaining the conflict of authority may lie in different meanings of the word, "jurisdiction." The Federal Circuit in *Bray* discussed the apparent confusion relating to whether the statute of limitations issue goes to the court's subject matter jurisdiction or the sufficiency of the claim. *Bray*, 785 F.2d at 992 (stating that "[o]ver the years, the term 'jurisdiction' has been batted about like a bird caught in a badminton game. Using 'jurisdiction' as though it must have one and always the same meaning, courts and lawyers have failed to recognize that it has been given at least two distinct meanings."). The court explained that the confusion exists due to the failure of some courts to recognize that the term "jurisdiction" has "two distinct meanings:" (1) an identification of "the substantive law over which a court has been *granted* power to adjudicate ('subject matter jurisdiction');" and (2) an identification of "the circumstances under which a court may *exercise* the power it has been granted." *Id.* (emphases in original). Ultimately, the Federal Circuit held that the limitations issue *does not affect* the fact that the court still has subject matter jurisdiction over the claim, it simply means that the claim must be dismissed because the period during which the government had consented to be sued had "expired." *Id.* Put succinctly, untimeliness does not remove the court's jurisdiction, just its ability to exercise jurisdiction. *See id.; see also Borough of Alpine*, 923 F.2d at 170 n.1 (stating that a claim's untimeliness simply acts as a limitation on the court's "*exercise*" of its subject matter jurisdiction) (emphasis in original).

Based on the foregoing review of 28 U.S.C. § 2501, and case law interpreting it, the court holds that the statute of limitations issue goes to the sufficiency of the claim asserted and, thus, does not affect the court's subject matter jurisdiction. Therefore, the issue of whether Plaintiffs have filed their claims outside of the limitations period is an issue to be tested by a motion to dismiss for failure to state a claim.

### B. Defendant's Motion to Dismiss Will Be Treated As One for Summary Judgment

Although Defendant's motion should be considered under RCFC 12(b)(6) rather than RCFC 12(b)(1) (with Defendant carrying the burden), RCFC 12(b) provides that where "matters outside the pleadings are presented and not excluded by the court, the motion *shall be treated as one for summary judgment*." RCFC 12(b) (emphasis added). Accordingly, since Defendant presented matters outside the pleadings with its motion, the court will treat the motion as one for summary judgment under RCFC 56. *See generally* Def.'s Mot.[5]

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Jay,* 998 F.2d at 982. The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Jay,* 998 F.2d at 982. Summary judgment is appropriate against a party who fails to make a showing sufficient to establish an essential element to that party's case where that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). However, the court must resolve any doubts regarding factual issues in favor of the non-moving party and draw all reasonable inferences in its favor. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1307 (Fed. Cir. 1998); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770, 773 (Fed. Cir. 1995). In order for a factual dispute to be genuine, the evidence must be such that a reasonable jury or trier of fact could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248 (1986).

## IV. Discussion

### A. Wishing Well I Apartments

#### 1. Pertinent Background Relating to the Wishing Well I Apartments

NRCB currently owns the Wishing Well I Apartments ("Wishing Well I"), which are the subject of this motion; however, NRCB is not the original owner. Pls.' Opp'n at 3. The FmHA issued the loan to the original owner of Wishing Well I in 1975. *Id.* Under the loan agreement, the owner could prepay the loan at any time without restriction. *See id.* However, the record indicates that the loan was re-amortized in 1980, and as a result, a 20-year restrictive-use provision was imposed on the property through the deed of trust. *Id.* Four years later, in 1984, Wishing Well I was transferred to NRCB through an amendment to the loan agreement and through the execution of an assumption agreement. *Id.* Although NRCB took over ownership, the property remained subject to the 20-year restriction, which provides:

---

[5] Defendant seems to tacitly accept that its motion may be considered as one for summary judgment. *See* Def.'s Reply at 6 n.3.

> The borrower and any successors in interest agree to use the housing *for the purpose of housing people eligible for occupancy as provided in Section 515 of Title V of the Housing Act of 1949 and FmHA regulations then extant during this 20-year period beginning September 8, 1980*. No person occupying the housing shall be required to vacate prior to the close of such 20-year period because of early repayment. The borrower understands that should an unsubsidized project be converted to subsidized within 15 years from the date the last loan on the project [unreadable] closed, that the period will be increased by 5 years. The borrower will be released during such period from these obligations only when the Government determines that there is no longer a need for such housing or that Federal or other financial assistance provided to the residents of such housing will no longer be provided. A tenant may seek enforcement of this provision as well as the Government.

*Id.* (citing Appendix In Support of Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss, App. at GV3081, Exh. B, Docket Entry No. 160, filed April 16, 2005 ("Pls.' Opp'n App.") (emphasis added). This provision effectively placed a restriction on NRCB's ability to convert the property into housing where market-rate rents could be charged. It did not, however, revoke NRCB's right to prepay subject to the restriction.

On January 15, 1990, NRCB, through one of its General Partners, submitted a letter to the FmHA stating, "I hereby request permission to prepay the Wishing Well I Loan." *See* Appendix in Support of Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment, App. at 404, Docket Entry No. 92, filed November 29, 2000 ("Pls.' App."). In response, on February 14, 1990, the FmHA responded by stating "we have determined that [NRCB] [is] not eligible to prepay the Wishing Well I loan" because the property is still subject to a restrictive-use provision. Pls.' App. at 407.[6] The FmHA's denial of NRCB's request is the basis for Defendant's motion.

---

[6]At the time the FmHA denied NRCB's request it stated that the reason was due to the transfer of ownership in 1984, which, in the FmHA's opinion, caused the property to become "subject to the restrictive-use provisions of Section 502 (c) of Title V, Housing Act of 1949, as amended." Pls.' Opp'n at 4 (citing Pls.' App. at 407). The FmHA thought that the 20-year restriction imposed by this amendment removed NRCB's ability to prepay without restriction until 2004. However, the parties later discovered that the property was not subject to this restriction, but another restriction, as a result of the 1980 reamortization. Pls.' Opp'n at 4-5. Hence, the 20-year restriction expires in 2000 rather than in 2004. *Id.* Because the specifics relating to this determination and the ultimate clarification by the FmHA are not pertinent to the court's ultimate finding, the court will dispense with a more detailed discussion.

### 2. The Parties' Arguments Relating to Wishing Well I

Defendant seeks the dismissal of NRCB's claims relating to Wishing Well I on statute of limitations grounds because Defendant argues that Plaintiff filed its claim more than six years after the FmHA breached the loan agreement. Def.'s Reply at 7. In this regard, Defendant asserts that Plaintiff submitted a written request for prepayment on January 15, 1990, which the FmHA denied on or about February 14, 1990. *Id.* According to Defendant, February 14, 1990, constitutes the accrual date of NRCB's claim for breach of contract. *Id.* Because NRCB's claims were filed on September 16, 1998, eight years after the government's denial, Defendant alleges that Plaintiff's claims are barred by the six-year statute of limitations under 28 U.S.C. § 2501. Def.'s Mot. at 7.

Plaintiff NRCB opposes Defendant's motion on two grounds.

First, Plaintiff argues that it filed its claim within the six-year statute of limitations because its claim could not have accrued prior to September 8, 2000, which is when the 20-year restrictive-use provision expired, and it filed its claim in 1998, under an anticipatory repudiation theory. Pls.' Opp'n at 12-13. In response to Defendant's argument that Plaintiff's claim accrued in 1990, when the FmHA allegedly breached the loan agreement by denying its prepayment request, Plaintiff argues that no breach could have occurred at that time because "the government had no present duty of performance under the contracts." *Id.* at 14. Plaintiff asserts that although the FmHA did not breach the loan agreement in 1990, it did so in December of 2000, when NRCB submitted its request for prepayment without restriction, and the FmHA denied the request. *See id.* at 13-14.

Second, Plaintiff argues that material facts are in dispute thereby making summary judgment inappropriate. *Id.* at 15-16. In support thereof, Plaintiff asserts: (a) that the written request which it submitted to the FmHA on January 15, 1990, was not a request to prepay as alleged by the Defendant, but was instead part of NRCB's exploration of the possibility of selling the property to a non-profit organization; (b) that around the same time as the February 14, 1990, denial, it had decided that selling to a non-profit was not financially feasible due to the adverse tax consequences attached to such a sale, and consequently it "effectively withdrew the request," and thus, the government's denial did not give rise to a breach; and (c) that even if NRCB requested to prepay, it was a request to prepay without restriction, and thus, was a request that the government acted properly in denying, as the Wishing Well I loan was still subject to the restrictive-use provision at that time. *See id.* at 4, 16; *see also id.* at 5 (citing Vasilatos Decl., ¶¶ 6-7 (Pls.' App. at 394)). For these reasons, Plaintiff asserts that Defendant's argument, at the very least, presents genuine issues of material fact. *Id.* at 17.

In response to NRCB's first argument, Defendant acknowledges Plaintiff's position that the loan agreement was still subject to a 20-year restrictive-use provision at the time Plaintiff allegedly requested prepayment. Def.'s Reply at 2. However, Defendant asserts that Plaintiff has confused the right to prepay a loan with the right to prepay without restriction. *Id.* According to Defendant, the presence of a restrictive-use provision does not affect the right to prepay a loan. *Id.* Defendant concedes that the restriction might make prepaying the loan less attractive, but

asserts that it does not affect the borrower's right to do so at any time. *Id.* Accordingly, Defendant asserts that although this restriction prohibited Plaintiff from prepaying its loan and exiting the program, Plaintiff still had the "right to prepay [its] loan[] at any time" and remain in the program subject to the restriction. *Id.* Thus, when the FmHA denied NRCB's prepayment request, Defendant argues that this action amounted to a breach and started the six-year clock for Plaintiff's breach of contract claim. *Id.* As such, because NRCB's claims were filed on September 16, 1998, eight years after the government's denial, Defendant argues that NRCB's claim is barred by the statute of limitations. Def.'s Mot. at 7.

With respect to NRCB's claim that material facts are in dispute, Defendant asserts that what the "NRCB principals may have thought or felt about the request to prepay the loan" is unimportant because the "fact remains that the request was submitted and denied more than six-years before NRCB filed suit." Def.'s Reply at 5.

### 3. A Reasonable Trier of Fact Could Conclude that the Wishing Well I Claim Was Filed Within the Limitations Period

The evidence shows that Plaintiff requested to prepay the Wishing Well I loan on January 15, 1990, and that the government denied that request on February 14, 1990. *See* Pls.' App. at 404 (stating "I hereby request permission to prepay the Wishing Well I Loan"). At the crux of the parties' dispute is the question of whether the government breached the loan agreement by denying NRCB's request for prepayment. In order to determine whether the government breached the agreement, the Supreme Court's ruling in *Franconia Assocs. v. United States*, is relevant. 536 U.S. 129 (2002). In *Franconia*, the Supreme Court stated that a breach occurs "when a borrower tenders prepayment and the government then dishonors its obligation to accept the tender and release its control over the property that secured the loan." *Id.* at 133. The *Franconia* decision does not appear to be squarely on point because it pertains to instances where the government is obligated to completely release the property subject to the loan, unlike here, where the FmHA had no obligation to "release its control" because the restrictive-use provision obligated Plaintiff to keep the housing within the program, even if it prepaid the loan.

The Supreme Court's holding is nonetheless instructive to the extent the FmHA breached the agreement by "dishonor[ing] its obligation to accept the tender," i.e., NRCB's prepayment request. In order to determine whether the FmHA breached the agreement, the court must ascertain the nature of NRCB's prepayment request. If NRCB requested to prepay subject to the restriction, then the government, by denying NRCB's request, breached the agreement and Plaintiff's claim for breach would have accrued as of February 14, 1990. To the contrary, however, if NRCB requested to prepay without restriction, then the government acted properly in denying such a request and no breach would have occurred, as NRCB could not evade the terms of the restriction.

Based on the information contained in the prepayment request, the court concludes that *there is* at least a genuine issue of material fact as to whether Plaintiff's request on January 15,

1990, was for prepayment of the loan without restriction. In this regard, Plaintiff's letter to the FmHA requesting prepayment is relevant:

> I hereby request permission to prepay the Wishing Well I Loan.
>
> The information per your Exhibit C is hereby submitted as a separate attachment, labeled Exhibit C.
>
> I hereby certify that I will continue to administer housing in accordance with Fair Housing Policies.
>
> I hereby also understand that the prepayment procedure could take more than 180 days.
>
> I look forward to your response.

Pls.' App. at 404.

This letter, standing alone, does not indicate the nature of Plaintiff's prepayment request. *See id.* However, and as noted in the letter, the FmHA also required Plaintiff to submit additional information regarding the property, which Plaintiff submitted in an attached document entitled Exhibit C. *See id.* Item 20 in Exhibit C, entitled Report On Prepayment, asks "[w]hether restrictive-use provisions are operable and date they expire." *Id.* at 406. Responding to this question, Plaintiff wrote "NONE TO MY KNOWLEDGE." *Id.* The court finds that this statement indicates that when Plaintiff submitted the request for prepayment it did not believe that the loan was subject to any restrictions. *See id.* Accordingly, when combined with Plaintiff's letter, wherein it requests to prepay, there is, at the least, a genuine issue of material fact as to whether Plaintiff's request was to prepay the loan without restriction.

Moreover, Defendant's counsel conceded at oral argument that it was a factual possibility that Plaintiff intended to prepay and exit the program entirely:

> MR. BRILLIANT: Well, I think in [Plaintiff's] own mind, he may have intended to prepay without restrictions . . . .
>
> THE COURT: So what restrictions could he possibly be wanting to get out from under, if it wasn't the restriction to low-income housing? What other restrictions would there be? Are there any restrictions on the note itself that contains the prepayment restrictions?
>
> MR. BRILLIANT: Typically, and I think in this case, the restrictions would be in the mortgage or deed or trust.

THE COURT: Okay. So then it's plausible, at least, to believe that what he meant by "without restrictions," putting the letter aside, in his declaration, was that he wanted to be free of the obligation to continue the low-income housing. Is that correct?

MR. BRILLIANT: Well, it could be that . . . .

Transcript of Oral Argument on July 7, 2005, at 42-43 ("Tr.").

Plaintiff has produced sufficient evidence for a reasonable trier of fact to conclude that its request on January 15, 1990, was to prepay without restriction and exit the government program entirely. As a result, because the property was subject to a restrictive-use provision that prohibited such a request from being granted, the FmHA would have been within its rights in denying Plaintiff's request. Accordingly, in viewing the facts in a light most favorable to Plaintiff, the statute of limitations could not have begun to run at the time of the February 14, 1990, denial because the government did not dishonor an obligation that was due at that time and thus, no breach occurred.

For these reasons, Defendant's motion is DENIED as it pertains to the Wishing Well I.

## B. The Viewmont East and Heritage Properties

### 1. Pertinent Background Relating to these Properties

The Viewmont East Apartments ("Viewmont") and the Heritage Apartments ("Heritage") are now held by ABCD. Pls.' Opp'n at 6. However, ABCD is not the original holder of these properties. *Id.* In fact, the FmHA issued mortgages to the original owners, in or about 1977 and 1979. *Id.* On June 30, 1989, the Koh family, through Maria Koh (mother) and her four children (Audrey Koh, Barbara Koh, Christopher Koh, and David Koh), assumed ownership of the two properties. *Id.* Soon thereafter, the interests of the four children were transferred to a family trust called ABCD, in which the children each retain an interest. *Id.*

The assumption agreements signed by the Kohs incorporated the terms of the original promissory notes and mortgages issued by the FmHA. *Id.* at 6. Included within these terms is the right to prepay the loan. *Id.* However, as with Wishing Well I, these agreements also contained a 20-year restrictive-use provision, which prohibits the owners from prepaying without restriction until June 30, 2009. *Id.* at 7. *See* Def.'s Mot. at 8. Accordingly, any request to prepay without restriction prior to the expiration date in 2009, would be properly denied by the government, and for the most part, any request to prepay subject to the restriction should be accepted.

In this regard, ABCD, through the Koh family, submitted a request to prepay on or about July 22, 1992.[7] Appendix in Support of Defendant's Motion to Dismiss, App. at 1 ("Def.'s App."). In response, in a letter dated August 20, 1992, the FmHA acknowledged receipt of Plaintiff's prepayment request and notified Plaintiff that it would need to provide certain listed "items," as the FmHA continued processing the request. *Id.* at 5. The FmHA's requirement that Plaintiff submit these "items" before its prepayment request would be accepted is the basis for Defendant's assertion that it breached the loan agreements in 1992 – more than six years before ABCD filed suit. *See* Def.'s Mot. at 9.

ABCD entered this litigation on July 20, 1999, through the filing of a notice of an additional plaintiff under the version of RCFC 20(a)(1) then in effect. Because it entered this case through joinder, a separate complaint was not filed on its behalf, and the Defendant did not object to ABCD's entry at that time. For the most part, ABCD's allegations are the same as NRCB's allegations, in that it alleges that the passage of legislation affected its prepayment rights, thereby acting as an anticipatory repudiation of its contractual agreement with the FmHA. However, and due to the fact that ABCD's claim involves a post-1979 loan, rather than a pre-1979 loan as with the Wishing Well I, its claim is based on the Housing and Community Development Act of 1992 ("the HCDA"), which extended the provisions of ELIHPA to loans entered into after 1979. *See* Tr. at 70-71. *See* Pub. L. No. 102-550, 106 Stat. 3672 (codified in relevant part at 42 U.S.C. § 1472(c) (1994)).

**2. The Parties' Arguments as to Viewmont and Heritage**

Defendant seeks to dismiss ABCD's claims relating to the Viewmont and Heritage apartments for failure to file within the applicable six-year statute of limitations. *See* Def.'s Mot. at 7-9. Defendant argues that ABCD's claims accrued in August of 1992, when the government responded to Plaintiff's prepayment request by imposing preconditions and restrictions. *Id.* at 9. Accordingly, Defendant argues that because ABCD did not join this lawsuit until July 20, 1999, almost seven years later, its claims are untimely.

Defendant advances two other independent arguments in support of its motion for dismissal, which are unrelated to the alleged untimeliness of Plaintiff's claim. First, it argues that because ABCD never filed a complaint, but rather relied upon the existing Plaintiffs' complaint when it entered the case, it did not invoke the court's jurisdiction. *Id.* at 3 n.3. Second, Defendant argues that ABCD is not in privity with the FmHA and, thus, it cannot maintain a suit for breach of contract against the government because the government's

---

[7] The Plaintiff began its effort to prepay the loans starting in 1991. Pls.' Opp'n at 7. The FmHA initially responded by offering "prepayment prevention" incentives pursuant to applicable statutes. *Id.* However, once the FmHA realized that the property was still subject to the 20-year restrictive-use provision, it rescinded these offers. *Id.* Although initially dissatisfied with the FmHA's actions, Plaintiff "later came to the understanding that the properties were in fact bound to the restrictive-use clause until 2009." *Id.*

contractual obligations were not owed to ABCD, but to the individual members of the Koh family who executed the 1989 assumption agreement. *Id.* at 8 n.7.

Plaintiff responds to Defendant's statute of limitations argument by noting that the assumption agreements entered into by the Koh family included a 20-year restrictive-use provision. *See* Pls.' Opp'n at 14. Thus, since the government is not obligated to accept a prepayment request without restriction until 2009, no breach could have occurred at the time of the request in 1992. *Id.* In addition, Plaintiff asserts that because its breach is premised on the passage of the HCDA, which Congress did not enact until November of 1992, the FmHA's August 20, 1992, letter could not be the basis for the government's alleged breach. *See* Tr. at 70-71.

Regarding Defendant's attack on jurisdiction, Plaintiff argues that Defendant has waived its right to challenge jurisdiction because it did not object when ABCD joined in the case. Pls.' Opp'n at 12 n.4. It also argues that even if Defendant has not waived the argument, the appropriate remedy is an amendment of the complaint pursuant to RCFC 15, not a dismissal. *Id.* As to Defendant's privity argument, Plaintiff asserts that this can be remedied through RCFC 17(a), which states that no action shall be dismissed on this basis until a reasonable time has been allowed for the substitution of the real party in interest. *See id.; see also* Tr. at 58, 74-75.

### 3. ABCD's Failure to File Its Own Complaint Does Not Merit Dismissal

As noted above, on July 20, 1999, ABCD entered this case through the filing of a notice of additional plaintiff under a version of RCFC 20(a)(1) then in effect. Because it entered this case through joinder, ABCD did not file a separate complaint, but simply relied upon the original Plaintiffs' complaint and the general allegations contained therein. The government did not object to ABCD's entry at that time. *See* Tr. at 56. Now, Defendant argues that ABCD's claim should be dismissed for failing to invoke the court's jurisdiction because by not filing a separate complaint, it did not properly join the case. Def.'s Mot. at 3 n.3.

Plaintiff's joinder appeared proper until the Supreme Court issued its opinion in *Franconia*, which held that a breach did not occur with the passage of the legislation itself, but rather with the government's refusal in each specific instance to accept prepayment. 536 U.S. at 143-44. At that time it became clear that many of these Plaintiffs were improperly joined. In view of this unanticipated change in the posture of the case, this court issued an order on November 5, 2004, severing each Plaintiff's claim, but consolidating the cases under the lead case of *Grass Valley Terrace v. United States* (COFC 98-726C).

The court does not believe dismissal is proper. First, misjoinder of parties is not grounds for dismissal of an action. RCFC 21. Moreover, in light of RCFC 15(d), the court believes that ABCD should be permitted to correct such a defect by filing a supplemental pleading. In this regard, RCFC 15(d) provides:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a

> supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

This rule authorizes the court to permit a party to supplement pleadings to account for changed circumstances. Because ABCD's failure to file a complaint can be directly attributed to misjoinder made evident by the Supreme Court's holding, this rule enables the court to permit Plaintiff to supplement its pleadings by filing an amended complaint. To do otherwise, would be contrary to both the express language and purpose of RCFC 21.

**4. ABCD's Apparent Lack of Privity Does Not Merit Dismissal**

Based on the evidence in the record, it does not appear that ABCD is in privity of contract with the FmHA. The assumption agreements that allowed the Koh family to take over the properties at issue were signed by individual members of the Koh family, and not by the trustee of ABCD. *See* Pls.' App. 18-19, 23-24. It appears that subsequent to the execution of the loan agreements the Koh family members placed their respective interests into ABCD, but it does not appear that this transfer altered the parties to the underlying loan agreement. In addition, and as Defendant correctly notes, Plaintiff has yet to identify any evidence indicating that ABCD was a party to the loan agreement. Def.'s Reply at 6 n.4.

Due to the apparent lack of privity, Defendant requests that the court dismiss ABCD's claims. However, the court finds that dismissal is not the appropriate remedy. Under RCFC 17 (a), ABCD is entitled to an opportunity to correct this apparent defect. RCFC 17(a) provides in relevant part:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

From the record, it appears that the five members of the Koh family who executed the assumption agreements are the real parties in interest. Accordingly, by the explicit and clear language of Rule 17(a), Plaintiff's claims should not be dismissed until it is given an opportunity to cure the defect, either by joining or substituting the real parties in interest, or by producing sufficient evidence to demonstrate that ABCD is, in fact, the real party in interest.

### 5. ABCD's Claims Have Not Accrued for Statute of Limitations Purposes

Defendant argues that ABCD's claims should be dismissed for failing to file within the six-year limitations period because its claims accrued on August 20, 1992, when the FmHA informed Plaintiff via a letter that it must submit additional "items" before its request for prepayment would be granted. Def.'s Mot. at 8-9 (citing Def.'s App. at 5). Defendant argues that by making Plaintiff complete these additional requirements rather than simply allowing Plaintiff to prepay without delay, the FmHA breached the loan agreements at that time. *Id.* According to Defendant, Plaintiff's claims for breach of contract are untimely because they were not filed within six years of the government's breach. *Id.*

As an initial matter, in view of the express statement by Christopher J. Koh that he intended to remain in the program after prepaying the loan, Plaintiff cannot avail itself of the argument that it intended to prepay *without restriction*. *See* Def.'s App. at 2 (Letter from Christopher J. Koh to all tenants of Viewmont East and Heritage Apartments) (stating that "[w]e wish to emphasize that the operations of the Viewmont East and Heritage apartments will remain the same"); *see also* Def.'s App. at 7 (Letter from Christopher J. Koh to Ms. Joan Barry of FmHA) (stating that "we shall continue to provide Section 8 housing"). In addition, Plaintiff concedes that there are no material issues of fact in dispute. *See* Pls.' Opp'n at 16 n.8.

For the reasons discussed below, the court finds that Defendant's statute of limitations argument fails.

Defendant's argument fails for the simple reason that the FmHA's August 20, 1992, letter to Plaintiff does not even purport to be a denial of Plaintiff's prepayment request and, thus, cannot be a breach.[8] This letter seems to acknowledge that Plaintiff is entitled to prepay and merely instructs Plaintiff on how to proceed. *See* Def.'s App. at 5. In this regard, after informing Christopher Koh of the remaining measures that must be taken, the letter expressly states "that prepayment commitments should not be finalized until [the] Agency issues a letter of consent. Approximate date when decision is to be made is October 20, 1992." *See id*. at 5-6. Absent from the letter is any rejection or denial of the prepayment request. In fact, and to the contrary, the FmHA, through the letter, seems to acknowledge that Plaintiff will be able to prepay, but that it must first complete certain "items," which are more in the nature of procedural steps. *See id.* Moreover, Defendant has not set forth any evidence demonstrating that the government

---

[8] Defendant seemingly acknowledges that a plain reading of the letter indicates that the FmHA has not breached the loan agreement. *See* Tr. at 67. (During the oral argument on Defendant's motion, Defendant's counsel stated that "if you take the August 20, 1992 response of the government, and you just look at that on its face, you can't tell, you know, that wouldn't necessarily itself be a breach. Because it's saying, well, you have to go through these procedures.").

materially impaired Plaintiff's prepayment rights by setting forth these "items." *Id.* As a result, the court finds that ABCD filed its claims within the applicable statute of limitations period.[9]

**V. Conclusion**

In view of the foregoing, the court hereby ORDERS the following:

(1) Defendant has failed to carry its burden of demonstrating that no reasonable trier of fact could conclude that NRCB's claims for Wishing Well I were filed within the applicable statute of limitations. Accordingly, Defendant's motion to dismiss is hereby DENIED as it pertains to NRCB.

(2) ABCD's claims for Viewmont and Heritage were filed within the applicable statute of limitations period. Accordingly, Defendant's motion to dismiss is hereby DENIED as it pertains to ABCD.

(3) Pursuant to RCFC 17(a), ABCD shall file an appropriate motion to substitute the real parties in interest on or before **January 23, 2006.**

(4) For those Plaintiffs in this consolidated action who have not already filed complaints on their own behalf, the court grants leave, pursuant to RCFC 15(d), to file such supplemental pleadings to reflect the changed circumstances that have arisen due to the Supreme Court's decision in *Franconia v. United States*, 536 U.S. 129 (2002). Such supplemental pleadings shall be filed on or before **February 6, 2006.**

s/ Edward J. Damich
Edward J. Damich
Chief Judge

[9] In light of this finding, it is unnecessary to address Plaintiff's argument that its claims could not have accrued on the date of the FmHA letter because its breach of contract claims are based on the passage of the HCDA, which Congress enacted more than two months after the FmHA sent this letter. *See* Tr. at 70-71.